### SULLIVAN.

---

## METCALF *v.* GILMORE.

In a suit at law, either party may be allowed to file a bill in equity as an amendment of his pleading.

A bill in equity for an injunction against the use, in this state, of a judgment rendered in another state, cannot be maintained on the ground that the judgment was obtained by the false and fraudulent testimony of the prevailing party.

BILL IN EQUITY, for an injunction to restrain the defendant from setting up an Illinois judgment as a defence in a suit at law brought by the plaintiff against the defendant in this county. The defendant appeared specially, and pleaded want of service. When the bill was filed the defendant was, and ever since has been, a citizen and resident of Illinois: and the bill was served on him in that state. The question that would be raised by a demurrer to the bill was also submitted.

*Burke*, for the defendant.

This court has no jurisdiction out of the limits of this state over persons or things. *Downer* v. *Shaw*, 22 N. H. 277. It is a foreign tribunal with regard to the citizens of other states. It cannot send its process into the jurisdiction of another state, and compel the citizens of that state to come here and answer to and defend any action, complaint, or bill pending before itself. These propositions hardly require authority to support them. But the following are referred to as recognizing the principle contended for: Story Confl. Laws, *s.* 509; Freeman Judgments, *s.* 564; *Ewer* v. *Coffin*, 1 Cush. 23; 1 Waite Actions and Defences 47; Story Eq. Pl., *ss.* 75–78, and authorities cited; Equity Rules 22 and 47 of the Supreme Court of the U. S. Service of process on a defendant residing in another jurisdiction must be made upon him in this state in order to compel him to answer in one of its tribunals. *Libbey* v. *Hodgdon*, 9 N. H. 396. Nor will service out of the state avail when the defendant has specially appeared by attorney to object to it. *Wright* v. *Boynton*, 37 N. H. 9. And *March* v. *Eastern R. R.*, 40 N. H. 583, recognizes the same doctrine. The defendant in this case is not a resident of the state, was not in the state when the service of the bill in this case was made upon him, and has not appeared in this case save to except to the jurisdiction of this court, for want of due service of process. Nor has he sought redress in this tribunal in any case. He has, in another suit, when casually in this state, been summoned by the plaintiff to answer to an action, and has appeared to defend himself against what he deems a false claim made against him by the plaintiff.

A court of equity does not interfere with judgments at law, unless the complainant has an equitable defence, of which he was not entitled to avail himself at law, or of which he was prevented availing himself by fraud or accident, he being free from negligence. *Hendrickson* v. *Hinkley*, 17 How. 443; *Sample* v. *Barnes*, 14 How. 70; *Wynn* v. *Wilson*, Hempst. 698; *Kidwell* v. *Masterson*, 3 Cranch C. C. 52; *Creath* v. *Sims*, 5 How. 192; *Maxwell* v. *Kennedy*, 8 How. 210; *Le Guen* v. *Gouverneur*, 1 Johns. Ch. 436. The plaintiff comes within the principles of these decisions. The record of the court in Chicago, on file in this court, shows that he had ample opportunity to try all the matters in issue between himself and the defendant. He did try everything but his own set-off. That he withdrew just before the trial, in order to catch and sue the defendant in this jurisdiction, hoping to gain something by the adroit manœuvre. If the defendant has committed fraud, perjury, or other crime in Illinois (which is utterly denied and repelled), let the plaintiff pursue his remedy for such crime in the jurisdiction in which it was committed. He should not be permitted to harass the defendant in his defence to the legal action, which he has instituted in this jurisdiction when he has himself submitted to the

trial of the matter in controversy before a competent tribunal in another jurisdiction.

*Cushing*, *Wait*, and *Parker*, for the plaintiff.

"In general it may be stated, that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained." Story Eq., s. 885.

Divested of its verbiage, the naked proposition of the plea filed in this case is, that this court has no power to prevent itself from being made the instrument of a wrong, however palpable, merely because the party proposing to make use of it for that purpose chooses to remain, in person, beyond the territorial limits of the state, making use of counsel here for the accomplishment of the purpose. The plaintiff brings his suit against the defendant, who, by appearing to defend, has submitted himself, in everything pertaining to the cause, to the jurisdiction of this court. Although our process may not reach his person in such a manner as to subject it to pains and penalties, he is, nevertheless, subject, for all the purposes of the cause, to any and all orders and decrees which the proper conduct of the case may require to be made. *Stone* v. *Anderson*, 25 N. H. 221.

A subpoena out of chancery may not reach the defendant out of New Hampshire, but when he comes here, either in person or by his counsel, to make his defence, he has submitted his case and all its subject-matter to the jurisdiction of the court, and any order or decree relating to the cause, of which he or his counsel has notice, will bind him with respect to the cause. The subject-matter of this bill is the action at law pending in this court between the parties, and the unconscionable defence which the defendant is attempting to set up. This is all within the jurisdiction of this court, and its process can reach either the defendant, or his agents or counsel, whenever they come into court for the purpose of making such defence. *March* v. *Eastern R. R.*, 40 N. H. 583, seems to us to recognize the doctrine for which we contend. *St. Luke's Hospital* v. *Barclay*, 3 Blatchf. 259, and *Marco* v. *Low*, 55 Me. 549, seem to be directly in point. See, also, Adams Eq. 322, 324.

*Wait*, for the plaintiff.

The bill alleges, in substance, that the defendant took advantage of the plaintiff's unavoidable absence, from illness, to obtain, by perjury and fraud, a judgment against him in the court of Illinois, which he knew was unjust. And the question is, Shall he be per-

mitted, against conscience, to make use of that judgment in New Hampshire? On general principles, as administered in courts of equity, can the relief be afforded? It is held, in *Company* v. *Mathes*, 5 N. H. 574, that "It is a good cause for granting a new trial, that one of the witnesses of the party in whose favor the verdict is, has been convicted of perjury in the cause." That was a motion for a new trial in an action at law. We conceive that conviction of the perjury is required only that it may be rendered certain that the judgment obtained was the product of perjury, and so that it shall not be made an issue in the trial of the cause. A demurrer to the bill admits every material allegation of the bill. It admits that the defendant's judgment was obtained by perjury, corruption, and fraud; there is no issue to be tried, and no facts to be established by evidence; all stand admitted by the demurrer. There are no laches or negligence on the part of the plaintiff; but his misfortune was taken advantage of, to obtain the judgment which the defendant is now seeking to use, against conscience.

The reasoning on which courts of law refuse new trials, merely because a judgment has been obtained by false testimony, to wit, that it would lead to interminable litigation, each party asserting, and offering to prove, that the result obtained by the other was by falsehood and perjury, has no application to a bill in equity like the present. The judgment was not obtained merely by false testimony. The defendant sought his opportunity, or at least availed himself of the opportunity, when he knew the plaintiff was, by illness, unavoidably absent, to obtain an undue and unconscionable advantage. To this was added perjury. If this judgment had been obtained in New Hampshire, and by the same means, it would present a clear case for a new trial at law; much more a case for restraining its use, as against conscience, in equity. The case of *Stowell* v. *Eldred*, 26 Wis. 504, is strongly in point. If this relief cannot be granted, there will be a failure of justice which principle does not require. *Davis* v. *Headley*, 22 N. J. Eq. 115, 123; *Simmons* v. *Clark*, 56 Ill. 96, 103; *French* v. *Pease*, 10 Kan. 51, 54; *Dunlap* v. *Cody*, 31 Iowa 261; *Kinnier* v. *Kinnier*, 45 N. Y. 535; *Hunt* v. *Hunt*, 72 N. Y. 217, 225; *Adams* v. *Adams*, 51 N. H. 388.

That fraud, as a general proposition, vitiates judgments as well as all other legal obligations, has been well enough settled from a time long prior to the *Duchess of Kingston's case* (11 St. Trials 262), where the doctrine is declared by the twelve judges of England. It is there laid down that fraud is an extrinsic, collateral act, which vitiates the most solemn proceedings of courts of justice. Lord *Coke* says, it avoids all judicial acts, ecclesiastical or temporal. *Fermor's case*, 2 Coke 77. For the purposes of the present discussion, we suppose that all the material allegations of the bill are to be taken as true, and therefore that the judgment here

complained of was obtained by the defendant in the Illinois court by fraud. It will be in season to try that question, as one of fact, when it is denied by the answer of the defendant. Assuming the fraud, then, as alleged, does this court possess the power to grant the relief prayed?

1. What is the relief prayed? It is not that the judgment in Illinois may be set aside, nor is it that an erroneous judgment may be corrected. A bill in equity never does either of these. Story Eq., ss. 875, 1571. Had courts of equity assumed any such power, it is safe to believe that the controversy upon this subject would have had a very different termination in the time of Lords *Ellesmere* and *Coke* from that given it by King James, under the advice of the learned jurists of the realm. The relief sought is, that the defendant may be restrained from the use, against conscience, of a judgment obtained in Illinois by fraud.

2. Were the relief sought against a judgment recovered by the same means in the courts of New Hampshire, we suppose there can be no doubt that it would be granted. *Hibbard* v. *Eastman*, 47 N. H. 507, and cases there cited; *Robinson* v. *Wheeler*, 51 N. H. 384, 386. And the question is, Does it make any difference that it was a judgment obtained in another state of the American Union? The case of *Borden* v. *Fitch*, 15 Johns. 121, is often cited as sustaining our view, and I think the reasoning of the court there is altogether in that direction. I do not, however, rely upon that case, as it is doubtless capable of vindication on other grounds. Nor do I rely upon any of that large class of cases where the judgments have been resisted on the ground of a want of jurisdiction in the courts where they were rendered. *Pearce* v. *Olney*, 20 Conn. 544; *Dobson* v. *Pearce*, 12 N. Y. 156—*S. C.*, 1 Duer 142, dissenting opinion of *Paine, J.*; *Rogers* v. *Gwinn*, 21 Iowa 58; *Engel* v. *Scheuerman*, 40 Geo. 206; *Davis* v. *Smith*, 5 Geo. 274; *Hoit* v. *Alloway*, 2 Blackf. 108; *Coffee* v. *Neeley*, 2 Heisk. 304, are authorities for the plaintiff. The remarks of the chief-justice, in *Luckenbach* v. *Anderson*, 47 Pa. St. 123, show his understanding of the rule to be as laid down in the above cited cases. Such was also Judge *Story's* view. Confl. of Laws, s. 609. *Anderson* v. *Anderson*, 8 Ohio 109, has been sometimes cited as favoring an opposite doctrine; but how it can be so regarded is more than I can discover. The case was an action at law founded upon a judgment rendered in Virginia; and although the court held that to such an action fraud was not a good plea, they very distinctly affirm the doctrine that a court of equity will afford relief against such a judgment, and give reasons, which to the court were satisfactory, why the remedy should be exclusively in equity. The case is, in truth, a strong authority in favor of the doctrine for which we contend.

The case of *Bicknell* v. *Field*, 8 Paige Ch. 440, has been cited by some text writers as an authority directly against the doctrine

for which we contend. If it is so, it is the only case I have been
able to find, or to find any reference to, which holds that relief
may not be had in equity against such a judgment. It is to be
observed that *Bicknell* v. *Field* was decided by the chancellor
alone; and, however confessedly learned and able, it at least adds
nothing to the weight of his judgment in the case that it is opposed
to that of Vice-Chancellor *McCoun*, which shows that it was only
because the relative positions of the two judges were not reversed
that the final decision was not the other way. But if *Bicknell* v.
*Field* is what has been claimed for it, it must be regarded as over-
ruled in New York by the later case of *Dobson* v. *Pearce*, 12 N.
Y. 156. But I submit that *Bicknell* v. *Field* is no authority for
this defendant. In the *Duchess of Kingston's case*, which is cited
by Chief-Justice *Parker* in *Kittredge* v. *Emerson*, 15 N. H. 227, it
is said,—"Although it is not permitted to show that the court were
mistaken, it may be shown that they were misled." And that is
precisely what is claimed in the case at bar. It is, that the court
of Illinois was misled by the fraud of this defendant. Now, in
*Bicknell* v. *Field*, the bill which was demurred to alleged in sub-
stance that the record of the judgment in the Massachusetts court
from which relief was sought was entered up without authority
from the court, against its rules, and by fraud and collusion of the
clerk who made the record; in short, that there was, in fact, no
such judgment, and that the record was a false record. And the
opinion of the chancellor proceeds upon such an assumed state of
facts, and no other. That was not, therefore, a case where the
court were misled by fraud, but it was a case where the court were
misrepresented by the record. And the chancellor held the record
of such high verity, because in Massachusetts, that it could not be
allowed to be shown in New York to be false. Now we do not
deny the authenticity of the record, nor was that denied in any of
the other cases above cited; but we say the court of Illinois was
imposed upon by the defendant's fraud, and thereby misled, and
induced to render an unjust, though not a legally erroneous, judg-
ment. *Bicknell* v. *Field* is therefore as unlike as possible to the
case at bar, and is no authority whatever for the decision of
the latter. If, however, the case at bar were like that of *Bicknell*
v. *Field*, we should with some confidence ask this court to consider
whether it was correctly decided. It does seem to me, on reading
that case, that it was not well considered, and that it cannot stand,
in view of the reasoning of the other cases which are cited above.
It seems to be a case appropriate to the jurisdiction of a court
of equity, and that the relief there prayed ought to have been
given. But, whether the case were well decided or not, it is no
authority in the case now before the court.

By the case of *Christmas* v. *Russell*, 5 Wall. 290, it is now set-
tled, so far as the question can be settled by the supreme court of
the United States, that fraud is not a good plea to an action of

debt upon a judgment. As I understand the opinion of the court in that case, however, it does not proceed upon any doctrine derived from the federal constitution or laws, but goes upon the general ground that fraud is not a good plea in a court of law to an action upon a judgment; and the reasoning relates as much to a domestic judgment as to one of a sister state. It does not at all touch the question whether a court of equity can grant relief by way of injunction from such a judgment. The case is viewed in the same way by Mr. Bigelow—Estoppel 217, *note* 3; Fraud 179.

In *Kittredge* v. *Emerson*, 15 N. H. 227, 264, the chief-justice discusses the case of a supposed erroneous judgment—one which might be reversed on a writ of error. And he is undoubtedly sustained by all the authorities in the view that such a judgment can only be attacked by the proper proceeding for the correction of the error. But he admits very distinctly that the rule does not apply to a judgment obtained by fraud. And he observes, " To warrant that, there must be, not mistake of the court, but covin, collusion, or falsity of the party." And for this he cites the *Duchess of Kingston's case*, with other authorities. Nor are the federal constitution and laws at all relied upon by the chief-justice; but he asserts, and doubtless clearly maintains, that a judgment regularly rendered in a state court is not liable to be reëxamined in the federal courts except upon a writ of error. We do not assail the court of Illinois, nor do we assail its judgment because of error in rendering it. We assail this defendant for having by fraud misled that court, and thus obtained from it a judgment which it is against conscience that he should use.

It is said that this judgment must stand until regularly set aside in the jurisdiction where rendered. That observation has no application except to erroneous judgments, such as may be set aside on a writ of error. Courts of law do not set aside their own judgments for fraud. By a great and decisive preponderance of the authorities above cited, as well as many others that might be adduced, the only remedy against such a judgment is in equity; although in Iowa and New York, and perhaps in other states, where codes have been adopted, the remedy is afforded according to their peculiar practice. (See above cited authorities in those states.) But in those cases which hold that a remedy may be had in a court of law, that remedy is not by way of setting aside the fraudulent judgment. It is only by way of plea to an action which may be brought for recovery of its amount. It is idle, therefore, to talk about setting aside this Illinois judgment. The remedy, wherever sought, must be in some other form. Now, suppose the remedy by way of plea were allowed by the practice of the courts of Illinois: must this plaintiff make the journey to Illinois for the purpose of being sued, in order to set up that defence by way of plea? Perhaps, if he should be accommodating enough to do so, the defendant might not choose to bring suit

against him there. He would hardly be likely to do so if by refraining he could insure the unassailability of his fraudulent judgment in every other state of the Union, and be at liberty to pursue an action upon it in the home of the victim of his fraud.

But it is said that the plaintiff may prosecute a bill in equity in Illinois for relief against this judgment. Courts of equity do not set aside the judgments of courts of law; they can only restrain by injunction the unconscionable use of such judgments. Such an injunction operates only upon the person and within the jurisdiction of the court where granted. Such an injunction in Illinois can have no force in New Hampshire. It is equally idle, therefore, to insist in New Hampshire that the equitable remedy must first be sought in Illinois.

In Freeman on Judgments, *s.* 576, it is said,—" All defences which are admissible against a judgment where it was pronounced, are equally admissible in actions upon it in another state." And again: " Whether fraud can be assigned as a defence, seems to depend upon the form of practice in the state where the action on the judgment is brought. If, in such state, fraud can be pleaded to an action on a domestic judgment, it is equally available and equally efficient in actions on judgments of other states. But if, to avoid a domestic judgment for fraud, proceedings must be instituted in equity, then like proceedings, and those only, must be resorted to as against a judgment of another state." And see authorities there cited. Judge *Cooley* declares,—" The same defences may be made to a judgment when sued in another state, which could have been made to it in the state where rendered." Const. Lim. 17, *note* 1. The latter rule is acted upon by Judge *Dillon* and the court in *Rogers* v. *Gwinn*, 21 Iowa 58; and, assuming that relief against the judgment there in question would be afforded in Kentucky, it is on that ground administered in Iowa.

The act of congress of May 26, 1790 (1 St. at Large 122; U. S. Rev. St., *c.* 17, *s.* 905), is, "And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken." When it is considered that this act was passed in pursuance of section 1 of article 4 of the federal constitution, which expressly empowers congress to " prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof," how would it be possible, even in the absence of all judicial authority upon the subject, to hold otherwise than that a judgment of a state is to be treated in the same manner, and its enforcement restrained for the same causes everywhere, as in the state where rendered? I submit that the language of the act of Congress leaves nothing open for discussion upon this point. How this judgment would be treated in Illinois seems not to have been, thus far, fully settled by actual

decision of the courts of that state, though the cases of *Bimeler* v. *Dawson*, 4 Scam. 536, and *Hopkins* v. *Woodward*, 75 Ill. 62, would seem to leave little doubt how the question would be decided should it there directly arise, or that the decision would be in accordance with the prayer of our bill. " In the absence of proof," however, " the presumption is, that the laws of another state are the same as those of this state." 5 U. S. Dig., First Series, 501, s. 401, and the numerous authorities there cited. By the federal law, a judgment rendered in any state has the effect of a domestic judgment in other states. The defendant's Illinois judgment is as good here as in Illinois, but no better; and it is no better here than a New Hampshire judgment. *Board* v. *Columbia College*, 17 Wall. 521, 529; *Snydam* v. *Barber*, 18 N. Y. 468. In Illinois it is not reversible on error, nor correctible on supplementary proceedings, but it is voidable there for fraud; and it stands here as it stands there, so far as the defendant attempts to enforce it here. To dismiss this bill would be to give more effect to the judgment here than it would have in Illinois. If, in the absence of authority, there could be any doubt as to the law of New Hampshire, all question is removed by *Hibbard* v. *Eastman*, 47 N. H. 507, where it is fully settled that a party will be relieved in equity by injunction against the effects of just such a judgment as this. The presumption is, and that is fortified by an unbroken weight of authority in other states, that the same relief would be afforded in Illinois. If so, this plaintiff is entitled to equivalent relief here.

The authority of Bigelow has been referred to as favoring a doctrine adverse to the prayer of this bill. But so far from this being so, both in his book on Fraud and in that on Estoppel, although he favors the opinion that fraud cannot be set up in a court of law as a defence to an action on a judgment of a sister state, he distinctly declares that " The apparent conflict in these cases may be partly reconciled in the fact that several of the cases which assert the right of impeachment for fraud were proceedings in equity; and most of the authorities admit that the plea of fraud is good in equity." Frauds 178. And again: " We apprehend that the supreme court of the United States would not refuse to allow the allegation of fraud in either of the three following cases: First, where the jurisdiction of the court was obtained by fraud * * *; secondly, where the judgment itself, or some material step leading to it, was concocted in fraud," etc. *Id.* 179. And the whole force of the discussion of the subject by the same author in his book on Estoppel 214, 218, seems altogether to favor the doctrine that, though not at law, relief may be afforded in equity against a judgment obtained by fraud in a sister state. Freeman on Judgments, s. 576, seems clearly to favor the same view.

*Burke*, for the defendant, in reply.

The plaintiff seeks to enjoin the defendant from enforcing a judgment recovered by him against the plaintiff in Illinois, which the plaintiff alleges was obtained by the fraud of the defendant. The fraud alleged in the bill is " false and fraudulent " testimony given by the defendant in the trial of the cause in the court in Illinois. It is not denied that the court in Illinois before whom this cause was tried had jurisdiction of the parties and the subject-matter, due notice having been given to the plaintiff of the commencement and pendency of the suit.

The principal question is as to the binding power of a judgment recovered in one state and sought to be enforced in another. And this question has been fully and conclusively settled by the constitution of the United States (article 4, section 1), the legislation of congress under it, and the almost innumerable decisions of the courts of the several states and of the United States, given in interpretation of such constitutional provision. Judicial interpretation has established the principle, not now to be shaken, that the judgments of one state, when duly authenticated, are to receive the same recognition and force in other states as the judgments in those states are entitled to in the jurisdictions in which they were rendered. They are conclusive upon all matters which might have been pleaded, and could have legally entered into such judgments before they were rendered. Questions of jurisdiction over the parties and subject-matter of the suit, want of notice to the adverse party, or other matters existing before the rendition of the judgment, and affecting the right of the court to pronounce it, only can be recognized as defences against the judgment when it is sought to be enforced in another state. And matters happening after its rendition, such as release, payment, statute of limitations, etc., may be defences. This doctrine is fully sustained by the following cases, and numerous others which it is deemed unnecessary to cite: *Mills* v. *Duryee,* 7 Cranch 481; *Hampton* v. *M'Connel,* 3 Wheat. 234; *Elliott* v. *Peirsol,* 1 Pet. 340; *M'Elmoyle* v. *Cohen,* 13 Pet. 312; *Bissell* v. *Briggs,* 9 Mass. 462; *Hall* v. *Williams,* 6 Pick. 232; *Woodward* v. *Tremere,* 6 Pick. 354; *Reed* v. *Ross,* 1 Baldw. C. C. 36; *Evans* v. *Tatem,* 9 S. & R. 252; *Caldwell* v. *Carrington,* 9 Pet. 101; *Voorhees* v. *Bank of U. S.,* 10 Pet. 449.

A judgment recovered in a court of competent jurisdiction, while unreversed, is conclusive, as to the subject-matter of it, to every intent and purpose, and cannot be reëxamined in a new action founded on evidence which would have made a defence to the original suit. *Tilton* v. *Gordon,* 1 N. H. 33. The judgment of a court in one of the United States, having jurisdiction of the cause and the parties, is binding and conclusive on the parties and privies in every other court in the United States until it is regularly reversed by some court having jurisdiction for that purpose. *Kittredge* v. *Emerson,* 15 N. H. 227. It is a rule to which no exception is recollected, that the judgment of a court of competent jurisdiction,

while unreversed, concludes the subject-matter as between the same parties. They cannot again bring it into litigation. *U. S.* v. *Nourse*, 9 Pet. 8. The judgment of an inferior tribunal, when it comes collaterally in question, is conclusive so long as it remains unreversed. *Wilcox* v. *Jackson*, 13 Pet. 499, 511. Subject to the qualification that they are open to inquiry as to the jurisdiction of the court which gave them, and as to notice to the defendant, the judgment of a state court, not reversed by a superior court having jurisdiction, nor set aside by a direct proceeding in chancery, is conclusive in the courts of all other states when the subject-matter of the controversy is the same. *Christmas* v. *Russell*, 5 Wall. 292; *Homer* v. *Fish*, 1 Pick. 435. A decree of divorce, valid and effectual by the laws of the state in which it was obtained, is valid and effectual in all other states. *Cheever* v. *Wilson*, 9 Wall. 108. A judgment rendered in one state will, even though apparently harsh and erroneous, be regarded as valid and conclusive by the courts of another state, until reversed in the state where it was rendered, if the cause of action was there litigated. *Rankin* v. *Barnes*, 5 Bush. 20. When a jury in one state has decided on the question of notice, etc., that question is not open in an action brought in another state on the judgment. *Taylor* v. *Bryden*, 8 Johns. 173, cited by *Story* in Conflict of Laws, *s.* 609. A judgment obtained in one state is sufficient evidence in another state of the debt or matter adjudicated, until it be shown it was unfairly or irregularly obtained. *Ib.* But anything that could have been pleaded or proved in the original trial cannot be shown. See authorities above cited. Numerous other cases to the same effect might be cited on this point if it were necessary; but I leave the subject with the remark of the learned editors of the Am. Leading Cases, vol. 2, 745: "On the whole, it may be concluded that the provisions of the constitution on this subject are best satisfied by holding that the judgments of each state are obligations of record in every other, and are consequently conclusive in pleading and evidence, as a merger of all antecedent matters and causes of action to which they relate, and which come within their scope and operation."

The proceeding of the plaintiff to evade the force of the judgment is a bill in equity. And it is admitted by the plaintiff that the bill does not seek to set aside the judgment, but, on account of the fraud alleged in the bill, to prevent him from unconscionably using it by the omnipotent potency of an injunction. He substantially admits that the judgment cannot be set aside by such a proceeding.

In the case of *Hibbard* v. *Eastman*, 47 N. H. 507, *Bellows, C. J.*, remarks,—"On the other hand, it may, with equal safety, be laid down as a general rule, that a defence cannot be set up in equity which has been fully tried at law, although it may be the opinion of the court that the defence ought to have prevailed,"—citing *Duncan* v. *Lyon*, 3 Johns. Ch. 351. And it is the same thing if

the party had an opportunity to make the defence, but neglected it until after the matter had passed into a judgment. "If a party has not used due diligence in making such a defence at law, relief will ordinarily be refused in equity." *Bellows, C. J.*, in the same case. The case of *Hibbard* v. *Eastman* gives no countenance to the doctrine attempted to be maintained by the plaintiff.

Nor can fraud or mistake, happening on the trial of the original action, avail in a proceeding to set the judgment aside, because it is presumed that they are excluded by the presence and intervention of the judge presiding, who, it is presumed, would prevent them. 2 Am. Lead. Cases 742 (substantial comment of the learned editors). As hereinbefore stated, no judgment rendered by a court in one state, having jurisdiction of the parties and subject-matter, and with due notice to the defendant, can be set aside by the courts of another state for fraud, or any other defence which could be pleaded or proved in evidence in the original action, by bill in equity or otherwise. All such defences are merged in the original judgment. *Anderson* v. *Anderson*, 8 Ohio 108 ; *Tarbox* v. *Hays*, 6 Watts 398 ; 2 Am. Lead. Cases 737. In an action on a judgment rendered in New York, a plea of *nil debet*, and a plea that the judgment was obtained by fraud and without consideration, were held equally inadmissible—the first as attempting to deny the legal obligation of what was matter of record, and the last as inviting an inquiry into the merits of a controversy which had received a final and conclusive determination. The merits of the cause of action are not open to examination. *Evans* v. *Tatem*, before cited ; *Benton* v. *Burgot*, 10 S. & R. 240 ; *Reed* v. *Ross*, 1 Baldw. C. C. 36 ; 2 Am. Lead. Cases 738.

Yet, so far as I have been able to examine them, the plaintiff relies upon cases precisely of that character. He cites on this point *Pearce* v. *Olney*, 20 Conn. 544 ; *Dawson* v. *Pearce*, 12 N. Y. 156 ; *Rogers* v. *Gwinn*, 21 Iowa 58 ; *Engel* v. *Scheuerman*, 40 Geo. 206 ; *Davis* v. *Smith*, 5 Geo. 274 ; *Hoit* v. *Alloway*, 2 Blackf. 108 ; *Coffee* v. *Neeley*, 2 Heisk. 304 ; *French* v. *Pease*, 10 Kan. 51 ; *Adams* v. *Adams*, 51 N. H. 388 ; *Dunlap* v. *Cody*, 31 Iowa 200 ; and others which I have not been able to examine, but which presumably involve substantially the same facts. In *Pearce* v. *Olney* the original judgment was procured by a fraud outside of the record;—by assuring the defendant that nothing more should be done in the action without notice to him, and afterward, without giving him notice, proceeding with the case to final judgment. In *Dawson* v. *Pearce* it was declared that a court of equity has power to grant relief against a judgment procured by a fraud, which, it will be seen hereafter, must have been intended a fraud committed outside of the record. In *Gwinn* v. *Rogers* the plaintiff assured the defendant that he would discontinue an action which he had commenced against him. But instead of doing so, the plaintiff, in the absence of the defendant and without his knowledge, prosecuted

the action to judgment.    In *Engel* v. *Scheuerman* it was held that
a party might be restrained from enforcing a judgment in one
state, where the defendant had been led to believe that the suit in
the sister state had been abandoned.    But Bigelow, in his work on
Estoppels *(p.* 185) says, "This doctrine is unsettled."    In *Davis* v.
*Smith* it was held that a judgment recovered in one state, and
attempted to be enforced in another, may be impeached for fraud
or want of jurisdiction of the person and subject-matter.    I have
not been able to find a full report of the case, but it is presumed,
in view of the general drift of the authorities, that the fraud must
be extraneous of the matters which were or might have been
pleaded or proved in evidence in defence.    In *Holt* v. *Alloway* it
was held that to a judgment recovered in another state the defend-
ant may plead that it was obtained by fraud, or that the court had
no jurisdiction of the person or subject-matter.    The fraud presum-
ably must have been committed outside of the record, as held in
other cases.    In *Coffee* v. *Neeley*, in Tennessee, in defence against
a judgment, the defendant pleaded that the plaintiff took advan-
tage of political prejudices, existing when the suit was commenced
in Kentucky, to combine the citizens of that state to prevent his
making any defence, and therefore the defendant allowed a default
to be taken against him, because he could not appear without en-
dangering his life.    Held by the court to be tatamount to a fraud.
The case of *Adams* v. *Adams* does not sustain the plaintiff.    The
case originated in the jurisdiction of this state, and was prosecuted
to a decision without notice to the party against whom the judg-
ment was rendered.    It is a case over which the supreme court had
unquestionable authority.

When a party, by some act or declaration out of the record, lulls
his opponent into false security, or by other means deceives him,
and thereby obtains a judgment or decree to his prejudice, the
judgment or decree thus obtained is fraudulent, and may be im-
peached on that ground.    *Ellis* v. *Kelly*, 8 Bush. (Ky.) 621.    It is
this class of cases, if any, in which fraud can be pleaded as a defence
against a judgment rendered in another state.    And it is upon this
principle that Judge *Dillon* proceeded in the case of *Rogers* v. *Gwinn*,
cited by the plaintiff, and that the remark of Judge *Cooley* can be
explained.    Those able judges would not be found expressing opin-
ions contrary to the volume of authorities denying the doctrine
contended for by the plaintiff.    The very paragraph (576 in
Freem. Judg.) cited by the plaintiff sustains the doctrine con-
tended for by the defendant with regard to the conclusiveness of
judgments rendered in one state and sought to be enforced in
another.    That author says, in the paragraph referred to, "Noth-
ing which could have been pleaded in the original action can be
pleaded against the judgment.    Errors and irregularities in the
proceedings in the original suit do not in any respect impair the
effect of the judgment, unless taken advantage of by an appeal, or

some other appropriate correctory proceeding." The authorities cited by the plaintiff, namely, the cases mentioned above, and Freeman on Judgments, and Judges *Cooley* and *Dillon*, to the effect that the same defences that can be made to judgments in the states where they are rendered may be made in the states where they are sought to be enforced, rightly understood and interpreted, are not disputed by the defendant,—that is, if such judgments in the states in which they were rendered are held conclusive against all matters of defence then existing, and which might have been pleaded or proved in evidence on the trial. If understood to imply more than this, they are denied. If they had the binding force which is understood to be claimed for them by the plaintiff, they would in effect repeal the provisions of the constitution, and the decrees of the courts founded upon such provisions. A judgment, valid otherwise, cannot be disturbed by parties and privies by a plea of fraud. *Christmas* v. *Russell*, before cited; *M'Rae* v. *Mattoon*, 13 Pick. 53. If this were so, as *Putnam*, *J.*, pertinently remarks in the case last cited, "The law would become a game of frauds, in which the greatest rogue would become the most successful player."

Nor can a party to a judgment be permitted to impeach it collaterally in equity by proof of mistake or fraud in the rendition thereof. *B. & W. R. R.* v. *Sparhawk*, 1 Allen 448; *Stovall* v. *Banks*, 10 Wall. 583. Neither fraud nor *nil debet* can be pleaded upon a judgment rendered in another state. *Maxwell* v. *Stewart*, 22 Wall. 77, confirms expressly the decision rendered in *Christmas* v. *Russell*, 5 Wall. 290 ; and Bigelow, in his work on Estoppels, sustains the doctrine contended for. On *p.* 137 he says, "The cases which have decided the question the other way [namely, that courts of one state cannot inquire into the question of fraud in a judgment rendered in another state], are not so few nor so obscure. The point was decided in a recent case in the supreme court of Iowa [*Smith* v. *Smith*, 22 Iowa 516]. The offer to prove that the judgment had been procured by fraud was rejected by the court below, exceptions were taken, and the ruling sustained on appeal. The court said, 'If a judgment can be attacked for fraud in any case, it can be only by a direct proceeding.'" The same doctrine is held in Tennessee. *Kelley* v. *Mize*, 3 Sneed 59. And Mr. Bigelow adds *(p.* 138), "The point has been thus decided also as to the judgments of the sister states," citing *Anderson* v. *Anderson*, 8 Ohio 109. And he further adds, "And the strongest case on the subject is one of this class recently decided in the supreme court of the United States (citing *Christmas* v. *Russell*), and there can now be no doubt that the plea of fraud, by parties and privies, is unavailing to disturb the effect of an otherwise valid judgment."

Thus the following propositions seem to be well established by the authorities, viz. :

1. A judgment cannot be disturbed for any matter of defence

existing, and which might have been pleaded or proved in evidence at the time of the trial.

2. Neither fraud nor mistake can be pleaded against the judgment.

3. The judgment cannot be attacked collaterally by a proceeding at law or in equity.

4. The remedy for any sufficient cause for reversing the judgment must be by a proper proceeding in some court of competent jurisdiction against the judgment directly in the state in which it was rendered, and not collaterally in another state, as is attempted in this case.

5. The judgment in this case cannot be reversed in any court of competent jurisdiction, even in the state of Illinois, for any cause happening on the trial, not even for fraud or false swearing, as alleged in the plaintiff's bill, but which is emphatically denied by the defendant.

And, finally, it is a familiar principle that equity gives no relief when the plaintiff has a remedy at law. In this case he had such remedy by appeal from the court in Chicago to a higher tribunal, which he neglected to take. And he may now have his remedy at law by applying to the same court for a new trial, setting forth, by affidavit and petition, in the usual manner, the fraud alleged in his bill as a reason for such new trial.

DOE, C. J. It is not necessary to consider whether effective service of New Hampshire process was made upon the defendant in Illinois, since the object of service can be legally and justly accomplished by an amendment in another suit. The plaintiff has an action at law pending in this county against the defendant, in which the defendant proposes to set up his Illinois judgment as a defence. This action, being for an injunction to restrain the defendant from making that use of the judgment, may, by amendment, be joined with the pending suit at law, to the defence of which it relates. At the trial term, a memorandum may be made on the equity docket, showing that, by amendment, this case is the equity branch of the controversy of which No. — of the civil docket is the law branch; and a memorandum may be made on the civil docket, showing that this bill, No. — of the equity docket, is allowed as an amendment of the declaration in the suit at law.

This action and the action at law are parts of one proceeding for the decision of one controversy, in one court of united law and equity jurisdiction, in which both parties have already appeared. In that proceeding, the judge presiding at the trial term has no occasion to make an imaginary division and disconnection of the jurisdiction which the legislature have united. It is not his duty to consider himself two courts for the purpose of oppressing the parties by the delay and expense of another unnecessary suit. Courts have invented legal fictions for what was regarded as an

advancement of justice; but the fiction that one court is two courts is not to be invented for a mere purpose of injustice. When the powers of giving relief at law and in equity were vested in different courts, the common-law judge did not, by amendment of his record, institute a suit in equity to be carried on before the chancellor. But when the legislature united these jurisdictions in one person, they did not command him to unnecessarily assume a fictitious duality, and unnecessarily maintain a distinction which they abolished. It became his duty to recognize and act upon the unity of his jurisdiction, and to exercise his combined powers in such a manner as to give parties the full benefit of the reformed judicature. It is not for him to resist the law-making power by perpetuating ancient evils and inconveniences, the cause of which that power has eradicated.

When it is discovered in a suit at law that some auxiliary equitable relief is essential, another suit in another court would be necessary if the judge were not a chancellor. In this case, the judge being a chancellor, another suit is not necessary. The question is not what could be done by a common-law judge without equity power, but what is the duty of a judge administering both branches of the law. A new process is not needed to bring into court either party who is there, or, having been notified, is bound to be there. If either party is surprised, or for any reason needs time to meet unexpected evidence, or to prepare for the trial of an unexpected question, a postponement or continuance is a relief for him as appropriate as another suit. Whether, in a suit at law, justice demands the allowance of an amendment for the relief of either party in equity, is a question of fact to be considered upon all the circumstances of the case. There is no more occasion to compel this plaintiff to resort to service of process in this suit, than to put him to a second suit, and a second service of process, for any remedy he might obtain by any amendment in any case.

In a suit at law, it may be found that the reformation of a deed, or other written contract of the parties, is necessary to prevent the rendition of a judgment that would be grossly unjust. *Prescott* v. *Hawkins*, 12 N. H. 19, 28; *Busby* v. *Littlefield*, 31 N. H. 193; 33 N. H. 76. By a scrivener's mistake, a great wrong is to be done unless the mistake is corrected by equity power. The party who would prevail upon the uncorrected mistake cannot be found, and has no discoverable place of abode. The correction of the mistake would leave him no case; without a correction of it the other party has no case; and service of a bill in equity for the reformation of the writing is impossible. The suit at law is on trial. Both parties are present by counsel. In contemplation of law, both parties are there for all the legal purposes of that case. The erroneous writing is a part of the case, and is in the hands of the judge as evidence,—decisive in favor of wrong if allowed to remain false, and decisive in favor of right if made true. It is the duty of the

judge to make it true; and the only question is in what proceeding this duty shall be performed. An amendment on which the error of the writing can be eliminated, is as germane as a cross-examination of a witness that leads him to correct his erroneous testimony. The correction of the written evidence is as much a legal purpose of the case for which the parties are in court, as the rectification of the oral evidence.

The statute provides that amendments in matters of form and substance may be permitted in any action, in any stage of the proceedings. G. L., *c.* 226, *ss.* 8, 9. And this is a reënactment of the common law. *Frost* v. *Chesley,* Smith (N. H.) 202, 203; *McKean* v. *Cutler,* 48 N. H. 370, 376; *Rex* v. *Wilkes,* 4 Burr. 2527, 2567. If the judge does gross injustice by refusing to allow an appropriate amendment, he must do it for some better reason than the ancient severance of power now united in him. On the question of amendment, nothing can be more immaterial than that severance which has been discarded by statute. The material fact is, not that there was a time and place when and where, if he had been on a common-law bench, he would not also have been a chancellor, but that the legislature of this state have obviated the obstruction of justice that arose from the disunion of law and equity.

Against an amendment based on the existing unity of jurisdiction, it might be asserted that nothing can be done in court without a precedent, and that there is no precedent for such an amendment. But the unity of jurisdiction authorizes such an amendment as could have been made if the unity had been coeval with the common law. In a writ of entry on a mortgage, it is found that the mortgage should be reformed. If law and equity had not been disjoined in England (as by the true principle of the common law they could not be), another suit, with new process and new notice, for the reformation of the mortgage, would be no more necessary than another suit to amend a town-clerk's record or an officer's return, a reformation of which becomes necessary, and is made during the trial. By fair implication, the legislative act uniting the disjointed function prescribes whatever new proceedings are requisite for giving due effect to the union. There can be no good precedent for a reluctant or scanty execution of the statute.

As there was a time when there were no common-law precedents, everything that can be done with them could be done without them. And as nearly all our procedure, including initial, intermediate, and final process, pleading, trial, and judgment, at law and in equity, is of common-law judicial origin, and has been a subject of much common-law judicial alteration, the question arises whether this work is legally done by a court. It must be admitted that, in early times, the distinction between judicial and legislative power was very imperfectly developed, and that consequently there was much judicial legislation which is not evidence of the common law, and has no weight as common-law authority. But the great

mass of the precedents of common-law procedure were made, or approved and allowed, from time to time, in the rightful exercise of judicial power. Each of them is presumed to have been introduced because it was deemed reasonably necessary for the convenient ascertainment or vindication of some legal right. And the introduction of each was a precedent for introducing as many more as, at any subsequent time, should be found reasonably necessary for the same purpose. The non-production of a necessary one is an innovation,—a departure from an immemorial usage that is founded on an elementary principle.

It is a general rule of the common law of rights, that a right is entitled to an adequate remedy for its infringement, and to the use of convenient apparatus of procedure for ascertaining and establishing the right and obtaining the remedy. In many cases such apparatus is not needed. *Hoit* v. *Stratton Mills*, 54 N. H. 109, 116; *Haley* v. *Colcord, ante,* 7, 9; *Hopkins* v. *Dickson, ante,* 235; *State* v. *Morgan, ante,* 322, 325. When it is needed, the law requires the court to allow some convenient kind to be used; and what kind is convenient, is a question of fact.

In England, the right, the remedy, and the procedure may be prescribed by parliament: in New Hampshire this may be done by the legislature, under certain constitutional restrictions. By the common law, a judicial decision, or act that introduces a form or method of any step of procedure, or accepts it, or follows it as a precedent, or directs it to be followed, is not law, but, at the most, evidence, tending to show what form or method the court think is convenient in fact. Regularity and uniformity of practice are indispensable; and the decisions, rules, and precedents furnish an invaluable ritual of common-law procedure, the development of which can safely continue only with the extreme caution that is supposed to have generally attended its evolution thus far. As it is not a statutory code, and as the court cannot make law, this ritual is not law. Statutes authorizing the court to establish rules and orders of practice, and prescribe forms of proceeding (G. L., *c.* 208, *s.* 6; *c.* 231, *s.* 16), are reënactments of the common law. The legislature can no more delegate to the court the power of legislation, than the court can delegate the power of deciding the judicial questions of law raised in this case. The history of common-law procedure is a history of precedents, suggested, invented, or sanctioned by the court because the court regarded them as convenient in fact; altered and improved because the court regarded their improvement as convenient in fact; or laid aside and abandoned because experience, or changed conditions of property, business, and society, called for new ones more convenient in fact than the old.

" When, therefore, by the gradual influence of foreign trade and domestic tranquillity, the spirit of our military tenures began to decay, and at length the whole structure was removed, the judges

quickly perceived that the forms and delays of the old feodal actions (guarded with their several outworks of essoins, vouchers, aid-prayers, and a hundred other formidable intrenchments) were ill suited to that more simple and commercial mode of property which succeeded the former, and required a more speedy decision of right, to facilitate exchange and alienation. Yet they wisely avoided soliciting any great legislative revolution in the old established forms, which might have been productive of consequences more numerous and extensive than the most penetrating genius could foresee; but left them as they were, to languish in obscurity and oblivion, and endeavored by a series of minute contrivances to accommodate such personal actions as were then in use to all the most useful purposes of remedial justice: and where, through the dread of innovation, they hesitated at going so far as perhaps their good sense would have prompted them, they left an opening for the more liberal and enterprising judges, who have sat in our courts of equity, to show them their error by supplying the omissions of the courts of law. And since the new expedients have been refined by the practice of more than a century, and are sufficiently known and understood, they in general answer the purpose of doing speedy and substantial justice much better than could now be effected by any great fundamental alterations. The only difficulty that attends them arises from their fictions and circuities." 3 Bl. Com. 267. The growth of the action of assumpsit is an illustrative part of the expansion of procedure. Holmes Common Law 274–288.

The ancient chancery practice has been reconstructed by rules of court, and particularly by the rules of December, 1859, drawn by Judge *Bell.* 38 N. H. 579, 580, 605–624. No one supposed that this change was an invasion of the province of legislation. It was universally understood to be a proper judicial step in the path of precedent which requires improvement, and in the path of legal principle which requires the course of procedure to be kept in a condition suitable for litigants seeking the adjustment of their controversies and the defence of their rights. The judicial duty of allowing a convenient procedure, as a necessary incident of the administration of the law of rights, has not been and cannot be repealed by the court: and so far as it has not been changed by statute, it is now what it was at first, and what in the nature of things it must be. We have no more authority to refuse to allow methods of pleading and practice, consistent with the statute, and necessary for expeditious and economical litigation, than the primitive courts had to defeat justice by allowing no methods whatever.

But the plaintiff is not entitled to an injunction. The facts stated in the bill are, that the defendant, Gilmore, sued the plaintiff, Metcalf, in Illinois; Metcalf appeared and contested the suit; there was a trial; Metcalf was sick and unable to attend the trial,

in which he was represented by counsel; Gilmore took advantage of Metcalf's absence, and by his false testimony and fraud obtained a judgment which he knew was unjust. The general charge of fraud is insufficient. The particular facts constituting the fraud must be alleged. *Lyme* v. *Allen*, 51 N. H. 242, 244, 245. In this case, as in *Demerit* v. *Lyford*, 27 N. H. 541, 549, and *Folsom* v. *Folsom*, 55 N. H. 78, the only alleged fraud is in the falsity of evidence on which the judgment was rendered. If the judgment had been rendered in this state, and the plaintiff were entitled to any relief for the cause alleged in this bill, his remedy would be a new trial, upon the result of which the alleged wrong could be rectified, and a just judgment rendered that would take the place of, or opperate as an amendment of, the one alleged to be unjust. An injunction against the use of the judgment would not be an appropriate remedy, because the rights of the parties, so far as they are brought in question by this bill, should be established by the judgment complained of, or by a correction of it: and as this would not be done by an injunction against the use of it, the bill could not be maintained. If the plaintiff ought to have redress, there should be, not an order forbidding the use of the judgment, but an order making the judgment what it ought to be, so that both parties could use it justly. Being the settlement of a controversy, its use is to be facilitated, not obstructed. The purpose of the law, requiring a judgment to be rendered, is to be accomplished, not by depriving it of its operation and effect, but by making it right, and giving it free course.

A correction of the alleged wrong should be sought in some direct proceeding for the reformation of the judgment, which cannot be reformed on this bill, or in any proceeding in this state. *Lyme* v. *Allen*, 51 N. H. 242; *Adams* v. *Adams*, 51 N. H. 388. If the plaintiff has a remedy, it is in Illinois. The court of that state might find, as matter of law or fact, that his only remedy was a motion for delay, and an opportunity to prove the facts and show the falsity of Gilmore's testimony, before the judgment was rendered. They might think his counsel should have been fully instructed as to all material facts, and should have taken such a course, at the trial, or before the trial, as would have enabled the court, upon sufficient evidence of the truth, to render a just judgment. Hearing all the evidence the plaintiff has to offer, they might be of opinion that Gilmore's testimony was true, or that, if it was untrue, relief was barred by some fault of the plaintiff or his counsel. On many material points of law and fact, different conclusions might be reached in Illinois and New Hampshire: and there being no right of appeal from one state to the other, the questions of fact and law, raised by the complaint of perjury, should be settled in Illinois. When they are settled in that state, there will be no difficulty here in giving both parties the benefit of the adjudication. If the plaintiff should have time to seek

relief in Illinois, time can be given, on his motion, in the pending suit, without an injunction.    The plaintiff suggests that an Illinois injunction would have no force in this state.    But we must presume that if it were obtained, it would issue upon such a decision of the facts and the law as would preclude controversy here. When the facts and law are determined in Illinois, the judgment by which they are determined will have due effect in this state. If it should be held in Illinois that the only remedy is in New Hampshire, we should consider the case again in the posture in which such a decision would leave it.    But we deem it inexpedient to act upon the supposition that such a view will prevail in that state.

Under some circumstances, an award, obtained by perjury or fraud, is, in effect, set aside, on a bill in equity, when there is no other adequate remedy.    *Craft* v. *Thompson*, 51 N. H. 536, 542, 544; *Elkins* v. *Page*, 45 N. H. 310; *Rand* v. *Redington*, 13 N. H. 72; *Truesdale* v. *Straw*, 58 N. H. 208.    And when relief is given by injunction against a judgment, it is given on the ground that there is no other adequate remedy.    *Currier* v. *Esty*, 110 Mass. 536, 544.    Some of our decisions contain general remarks favorable to injunctions in some cases, against judgments obtained by perjury or fraud, without negligence in the injured party.    But such remarks are to be understood with the qualification that there is no other relief, or no other more appropriate.    In this state the remedy is generally by an application for a correction of the judgment.    An injunction against the use of the defendant's judgment would be as unsuitable as an action at law against him for damage done by his perjury.    *Hillsborough* v. *Nichols*, 46 N. H. 379.    If the judgment had been rendered in this state, it could not be attacked in this collateral manner.    *Demerit* v. *Lyford*, 27 N. H. 541; *Hollister* v. *Abbott*, 31 N. H. 442; *Gordon* v. *Gordon*, 55 N. H. 399; *Brewster* v. *Page*, 58 N. H. 4; *Ayer* v. *Messer*, ante, 279; *Spofford* v. *Smith*, ante, 366.    And in whatever manner it can be attacked, the question of remedy should be tried in Illinois.

It would seem that if any wrong was done that can be remedied, it was owing to this plaintiff's failure to fully instruct his counsel, and produce evidence sufficient to overcome the surprising testimony of this defendant; that the question should have been raised at the trial whether the trial should be postponed till the plaintiff could attend, or furnish the needed evidence; that an injunction against the use of the judgment would not be a proper remedy for the failure of counsel to raise that question; that if the question had been raised and decided in favor of Metcalf, he would have had the most fitting opportunity, and all the opportunity he could ask, to combat the alleged perjury; that if a motion for a postponement of the trial in his behalf was made and denied, this bill is virtually an appeal from the denial; and that if no such motion was made, there was some fault in him, or his

counsel, for want of a satisfactory explanation of which the bill is defective.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.