## BROOKS & a. v. HOWISON.

The necessity of a plenary remedy for the infringement of a legal right, accepted as a general rule of the common law, authorizes and requires the invention and use of convenient procedure for ascertaining and establishing the right and obtaining the remedy.

When a single action of assumpsit is an adequate and convenient mode of recovering money which one of several common owners of a chattel expressly or impliedly promised to pay his cotenants for his exclusive use of it, the promisees may join in such action at common law, and their several rights in the damages may be established and enforced by a necessary form of judgment and execution.

When their shares of the value of his use of the common property are to be allowed as a payment to him by them as his co-sureties, and their claim and other related affairs are entitled to a joint and complete adjustment which cannot be made at law, the inadequacy of remedy at law is a ground of chancery jurisdiction.

Justice may require the prosecution of an action at law and a bill in equity on the same cause of action at the same time.

ASSUMPSIT, for the use of furniture owned by the nine plaintiffs and the defendant as tenants in common. The declaration contained common counts and a special one. To the former the defendant pleaded the general issue: to the latter he demurred, on the ground that there could not be a joint recovery. The demurrer was sustained, and the plaintiffs excepted. The plaintiffs having filed a bill in equity on the same cause of action, the defendant

moved for an order requiring them to elect in which suit they would try the matters in controversy. The motion was denied, and the defendant excepted. By consent both suits were tried together by the court.

The plaintiffs and the defendant having been sureties on a note for Vose, who gave them a mortgage of the furniture as security, the defendant paid the amount due on the note and took it.

*R. M. Wallace*, for the plaintiffs. The defendant is liable, in some form of action, at law or in equity, to account for his use of the common property. His conduct and implied promise made him the bailiff of his co-owners, by agreement, independent of the statute of Anne; and he is liable to account for such profits as by proper diligence he might have received. Sto. Eq., *s.* 446. If his conduct and implied promise did not make him a bailiff, his conduct was an ouster of the plaintiffs, and a wrongful withholding of the property from them, for which he is liable. While many of our states have followed *Henderson* v. *Eason*, 17 Ad. & E. (N. S.) 701, in holding that one made bailiff by the statute of Anne does not receive more than comes to his just share within the meaning of that statute, if he merely has the entire and exclusive use of the common property, others have adopted the opposite construction, and held a common owner liable to account for such use. *Hayden* v. *Merrill*, 44 Vt. 336; *Early* v. *Friend*, 16 Grat. 21; *Graham* v. *Pierce*, 19 Grat. 2ˣ; *Cooper* v. *Cooper*, 1 Stock. (N. J.) 566; *Hancock* v. *Day*, 1 McMull. Eq. 69; *Thompson* v. *Bostick*, 1 McMull. Eq. 75; *Jones* v. *Massey*, 14 S. C. 292; *Shiels* v. *Stark*, 14 Ga. 435; *Pope* v. *Harkins*, 16 Ala. 321; *Cutler* v. *Currier*, 54 Me. 81. At common law, where tenants in common had constituted one of their number a bailiff, there was a sufficient remedy, and the bailiff was liable to account for what he ought to receive. A large class of cases arising where there was no agreement and no redress, the statute of Anne was passed to remedy the defect, and the object of the act would have been accomplished if statutory and common-law bailiffs had been held to be subject to the same liability; but in *Henderson* v. *Eason* a distinction was introduced without reason. The rule laid down in that case compels the court, in a large and constantly increasing class of cases, to say for this wrong there is no remedy. A better doctrine is declared by Judge *Cushing*, who says, in *Greenville* v. *Mason*, 57 N. H. 397,— "There ought to be some remedy found for this wrong. It must be true that from the arsenals of the law some weapon can be drawn with which successfully to combat this fraud."

The parties being co-sureties, and the case being one of contribution, equity has jurisdiction. G. L., *c.* 202, *s.* 1; Sto. Eq., *ss.* 492, 496, 498, 499, 522; Adams Eq. 268, 269; Big. Eq. 247, 249, 250; Pom. Eq., *ss.* 278, 980, 1418; *Walker* v. *Cheever*, 35 N. H. 339; *Brown* v. *Ray*, 18 N. H. 102. The bill can be main-

tained on the rights of the plaintiffs as joint owners (G. L., _c._ 209, _s._ 1, Sto. Eq., _ss._ 446, 466, 505, Pom. Eq., _s._ 1421, _Leach_ v. _Beattie_, 33 Vt. 195), or as mortgagees. Sto. Eq., _s._ 485 ; 2 Jones Mort., _s._ 1122 ; Jones Chattel Mort., _s._ 696 ; _Osgood_ v. _Pollard_, 17 N. H. 271 ; Sto. Bailm., _s._ 343. The bill is the proper remedy if there is not a plain, adequate, and complete remedy at law (G. L., _c._ 209, _s._ 1, Sto. Eq., _ss._ 33, 478), and to avoid a multiplicity of suits. Sto. Eq., _ss._ 457, 478, 496 ; Big. Eq. 251 ; _Walker_ v. _Cheever_, 35 N. H. 351. No suit at law can adjust the rights of these parties, or do them adequate justice where they must bring separate suits, and where some of the sureties are insolvent.

_G. B. French_, for the defendant. The demurrer was rightly sustained. The plaintiffs' interests are several. They cannot join in the action of assumpsit, and cannot recover on the common counts. _Wright_ v. _Cobleigh_, 21 N. H. 339, 342 ; _Smith_ v. _Woodman_, 28 N. H. 520, 528 ; _Mooers_ v. _Bunker_, 29 N. H. 420, 428, 429, 430 ; _Webster_ v. _Calef_, 47 N. H. 289.

"If the doctrines of joint and common ownership in things personal appear rather vague, meagre, and unsatisfactory, this is doubtless because they are so seldom applied in the courts. To adjust controversies between those who are so unfortunate as to have once become chattel communists, and to determine how far each proprietor shall enjoy or dispose of what ought to be either sold and divided, or else managed upon some special agreement, is a task which our courts are reluctant to assume." Sch. Per. Prop., _s._ 167 ; _Blood_ v. _Blood_, 110 Mass. 545 ; _Field_ v. _Craig_, 8 Allen 357. Prior to the statute of 3 & 4 Anne, _c._ 16, _s._ 27, the courts of common law gave no remedy for the recovery by a co-tenant of another co-tenant of rents, fines, &c., received beyond his proportion unless he could be shown to be a bailiff of the plaintiff. Sto. Eq., _s._ 446. "A bailiff is one who has the administration and charge of lands, goods, and chattels, to make the best benefit for the owner." Bac. Abr., Acc. ; Coke Lit. 172. "An action of account would lie for the profits which he had made, or might, by his industry or care, have reasonably made." But courts of chancery prior to the statute, in cases of real property at least, had provided a remedy by which a co-tenant who received more than his share of any single item of rent from any lessee should be held to account to another co-tenant for his part thereof. A reading of the few poorly reported cases that we can find before the statute shows that the right in equity recognized in practice was no greater than that recognized by the statute of Anne, and the practice after the statute, whether in equity or at law, admitted but one wrong to be redressed, that redressed by the statute. Chancery never treated sole use and occupation by one co-tenant as wrongful unless it amounted to an ouster of the other, and it did not call the occupant to account for the results of his labor. So far as rent is concerned,

if there were ten lessees of ten separate tenements belonging to ten joint owners, and one of the ten joint owners received of one of the lessees any rent covering the whole rent for any space of time, that rent he must divide with the rest. Had this principle been applicable to sole occupation by one joint owner, he could not have used any fractional part of the land without accounting for a proportional part of its products. *Henderson* v. *Eason*, 17 Ad. & E. (N. S.) 701. See remarks of the court in the course of the argument of the case, *pp.* 709, 712. This report of this case is by far better than that in 9 Eng. Law & Eq. 337; the inquiries of the several judges, and their comments, are very suggestive and pointed. In the latter report, page 338, the counsel for the occupant took the ground that the claim was inequitable, and the whole discussion is conducted not only upon the meaning of the statute of Anne, but upon the right and wrong of the matter as understood both by courts of law and of equity. That statute has ever been construed as remedial, and in ascertaining its application recourse was had to the practice in chancery to see what wrong there recognized needed and obtained a redress at law. The case came before the chancellor, and his submission of the matter to a court of law is an admission that the principles governing the latter court were as broad and liberal as those recognized in his own forum. It is possible he wished to know if the statute could be construed to cover more ground than the practice in chancery.

The discussions of the subject in the cases have not been conducted on the narrow ground of remedy, but that of right and justice; and courts of law and equity have held that to impose upon co-tenants liability for use when there is no ouster or enforced exclusion, would be a palpable invasion of long cherished rights, and would be in the face of the oldest and best established principles of joint ownership. The leading case is *Henderson* v. *Eason.* The cases that hold the same doctrine are numerous. *McMahon* v. *Burchell,* 2 Phill. 127; *Webster* v. *Calef,* 47 N. H. 289; *Brigham* v. *Eveleth,* 9 Mass. 538; *Jones* v. *Harraden,* 9 Mass. 540; *Sargent* v. *Parsons,* 12 Mass. 149, 154; *Fanning* v. *Chadwick,* 3 Pick. 424; *Munroe* v. *Lake,* 1 Met. 464; *Calhoun* v. *Curtis,* 4 Met. 414; *Wilbur* v. *Wilbur,* 13 Met. 404; *Ballou* v. *Wood,* 8 Cush. 54, 55; *Shepard* v. *Richards,* 2 Gray 424; *Badger* v. *Holmes,* 6 Gray 118; *Peck* v. *Carpenter,* 7 Gray 283; *Brown* v. *Wellington,* 106 Mass. 319; *Blood* v. *Blood,* 110 Mass. 545; *Sisson* v. *Tate,* 114 Mass. 497, 501; *Woolever* v. *Knapp,* 18 Barb. 265; *Dresser* v. *Dresser,* 40 Barb. 300; *Wilcox* v. *Wilcox,* 48 Barb. 327; *Scott* v. *Guernsey,* 60 Barb. 163; *Mumford* v. *Brown,* 1 Wend. 52; *Joslyn* v. *Joslyn,* 9 Hun 388; *Roseboom* v. *Roseboom,* 15 Hun 309, 316; *Austin* v. *Ahearne,* 61 N. Y. 6, 14; *Kline* v. *Jacobs,* 68 Penn. St. 57, 59; *Filbert* v. *Hoff,* 42 Penn. St. 97; *Supplee* v. *Yerkes,* 1 Chester County Rep. 401; *Israel* v. *Israel,* 30 Md. 120; *Ragan* v. *McCoy,* 29 Mo. 356; *Hutton* v. *Powers,* 38 Mo. 353; *Crane* v. *Wag-*

26*

*goner,* 27 Ind. 52; *Everts* v. *Beach,* 31 Mich. 136; *Wilmarth* v. *Palmer,* 34 Mich. 347; *Bird* v. *Bird,* 15 Fla. 424; *Kean* v. *Connelly,* 25 Minn. 222; *Hause* v. *Hause,* 29 Minn. 252; *Nelson* v. *Clay,* 7 J. J. Marsh. 138; *Pico* v. *Columbet,* 12 Cal. 414; *Goodenow* v. *Ewer,* 16 Cal. 461; *Howard* v. *Throckmorton,* 59 Cal. 79; *Balch* v. *Jones,* 61 Cal. 234; *Reynolds* v. *Wilmeth,* 45 Iowa 693; *Neil* v. *Shackelford,* 45 Tex. 119; *Linker* v. *Benson,* 67 N. C. 154; *Caldwell* v. *Neely,* 81 N. C. 114; *Buckelew* v. *Snedeker,* 12 C. E. Green 82; Freeman Cotenancy, *ss.* 251, 258, 270, 271, 272, 274, 275; Adams Eq. 232; Taylor Land. and Ten., *s.* 5, § 115, *n.* 3; Schoul. Per. Prop., *s.* 156; Story Eq., *s.* 916. The decisions in Maine are in harmony with this view, and the wording of the Maine statute of 1848 (Rev. Sts., *c.* 61, *s.* 1), "without the consent of his co-tenant," is a recognition of the controlling principle that sole use and occupation, without ouster, is not a wrong to be redressed in any form. *Cutler* v. *Currier,* 54 Me. 81; *Dyer* v. *Wilbur,* 48 Me. 287, 290; *Moses* v. *Ross,* 41 Me. 360; *Gowen* v. *Shaw,* 40 Me. 56, 58; *Duncan* v. *Sylvester,* 24 Me. 482; *Buck* v. *Spofford,* 31 Me. 34; *Richardson* v. *Richardson,* 72 Me. 403. In Connecticut there are no cases in point, because the statute of that state covers use and occupation as well as rent. Gen. Sts. of Conn., *c.* 15, *s.* 264. *Pope* v. *Harkins,* 16 Ala. 321, relates to rent received. In Illinois, Rev. Sts., *c.* 76, *s.* 1, and *c.* 2, *s.* 1, cover more ground than 4 Anne, *c.* 16.

DOE, C. J. Both parties put their contention on the ground that between themselves, and for the purposes of this case, the nine plaintiffs and the defendant have the rights of owners of the furniture in common. Each of them necessarily has an equal right to its possession. It came rightfully into the defendant's possession, and his right to keep it is equal to that of each of the plaintiffs. But mere possession of the property, a part of which is carpets, is very different from the consuming use he made of it a year and a half in his hotel. If it were possible for him to carry his use of his share to the point of destruction without injury to the plaintiffs, they could not complain of his doing what he pleased with his own. But his right to wear out his one tenth part is not a right to wear out their nine tenths; and his right to use his share is as far from a right to make a profitable or unprofitable use of their shares without compensation, as from a right to retain all money received by him for a bailee's use of the whole.

If our common law, instead of being in general a system of natural principles, necessarily adopted by custom and common consent, and necessarily conformable to the progress of society, were an ancient legislative code enacted by a court, much of it would be ill adapted to the situation and wants of this country, and repugnant to what are universally regarded as indispensable arrangements of modern life. Other harsh and repulsive doctrines, as well as the

feudal tenure of land *( Cole* v. *Lake Co.*, 54 N. H. 242, 279, 285, 286), growing out of social conditions that have ceased, and incompatible with the increase of trade, productive industry, and personal estate, have become obsolete; and the law has not fixed a day when the precedents of its adaptation to the mutability of human affairs shall no longer be in force.   The unwritten rules of ownership in common, prospectively implied from the exigencies of business by an enlightened public sense of expediency, obligation, and right, do not expand each share-owner's necessary right of possession into an unnecessary right of uncompensated use; nor make the undivided title a pretext for denying him any necessary remedy, in contract or tort, for a contractual or tortious violation of his proprietorship; nor restrict the co-tenants' rights of action against each other to cases of destruction, ouster, or an actual or constructive appointment of a bailiff, liable to account for what he ought to receive, or merely for his receipt of something from a third person; nor forbid an equitable contract to be inferred in a case like this by the trier of the facts from the character and destination of the property, the market value of its use, and other circumstantial evidence of the understanding upon which the owners' community of interest was formed, and upon which it remains unless removed by mutual agreement.   Emphasis is to be placed upon the simple merits of the controversy; and while the legal fiction of a contract implied by law may be invented and used to enforce the performance of a legal duty *( Sceva* v. *True*, 53 N. H. 627, *Kelley* v. *Davis*, 49 N. H. 187), it is not the function of the distinction between unity and severalty of title to turn aside the legal justice of the case.

The title of none of the shares being disputed, and the defendant's use being in its extent and effect what it was, it might not be easy for a jury to find there was not an original and unchanged understanding that he should account for the plaintiffs' shares of the market value of such a use.   They had notified him he must pay.   He understood they claimed he should allow the value of the use as a payment on the Vose note, or, in other words, should allow nine tenths of that value on the debt of contribution due him from them as his co-sureties on the note.   He expected to pay in that way if he could not avoid payment without giving up the furniture.   Two or three times, when spoken to about payment, he told them they might take the property: but when they proposed to take it, he was not ready to give it up, and retained it.   They understood he was to pay for the use; as co-sureties and co-mortgagees, they expected the use would be allowed as a payment on the Vose note: and he, finding they would not permit his use without such payment, necessarily came to the same understanding.   Their minds met in an implied agreement.

His use of the common property was worth $300,—of which sum, by the agreement, one tenth belonged to him, and nine tenths to

the nine plaintiffs.   When he refused to perform the agreement, the plaintiffs were entitled to an adequate action.   The necessity of a plenary remedy for the infringement of a legal right, accepted as a general rule of the common law, authorizes and requires the use of convenient procedure for ascertaining and establishing the right, and obtaining the remedy.   *Walker* v. *Walker* [*ante* 321]. If the defendant's promise had been to pay his co-tenants their shares in money, and had not been connected with any other transaction requiring a joint settlement, the suit in assumpsit would have been a common-law remedy, appropriate, complete, and not taken away by Gen. Laws, *c.* 220, *s.* 2.   An action at law by one partner or tenant in common against his co-partner or co-tenant may be inadequate by reason of a practical difficulty in that procedure of adjusting complicated accounts, or related rights, or giving other relief than the establishment of a title, the return of property to its owner, and the payment of damages in money. The examination of the parties on oath, which formerly could be effected only in a court of equity, was regarded as authorized by the confidence they were supposed to have reposed in each other; and inadequacy of remedy in this direction at law was a basis of chancery jurisdiction.   1 Ch. Pl. 39.   But no one of these difficulties is presented by the cause of action stated in the declaration in this case.

These ten owners could join in a suit against a trespasser, and in assumpsit against their lessee for rent of the common property hired by one contract, because a joint action would be just, economical, sufficient, and convenient.   For the same reason, this joint action could be maintained by nine tenths of the owners against their co-tenant, on his promise to pay them nine tenths of the value of the use in money.   For some purposes, the distinct and divisible character of the owners' interests in the property and the damages, would be a material element of their rights: but as a mere technical theory, causing no actual obstruction of justice in a joint suit, it would not make ten suits necessary for the ten, nor nine suits necessary for the nine.   There would be no obstacle of procedure requiring severance of action in either case.   The plaintiffs might as conveniently join in the exercise of their several rights of action for divisible shares of damages, as in the exercise of their several rights of letting or selling divisible shares of the property. Their rights of recovering their shares of $300 in money could be established in this action of assumpsit, either by several judgments, or one judgment in severalty, and could be enforced either by several executions, or one execution in severalty.   *Chauncy* v. *Ins. Co.*, 60 N. H. 428, 432; *Cole* v. *Gilford* [*ante* 60].   The value of the use could be as easily ascertained in this suit as in an action of all the owners or one of them against a stranger; and the value being found, nine tenths of it would be the shares of the plaintiffs, whose joinder, instead of being injurious to the defendant, would

avoid multiplicity of suits and multiplicity of costs in a single controversy that should be settled in one suit, or in as few suits as possible. The joinder of the plaintiffs is not error; the demurrer should have been overruled; and the exception on this point is sustained.

But while the declaration, stating a cause of action at law on a promise to pay money, is not bad for misjoinder of parties, the facts found at the trial show that their rights require a different mode of procedure, and other remedy than an execution for damages in assumpsit. The defendant was to pay the plaintiffs their shares of the $300, not in money, but by allowing that sum on the Vose note. Three of the plaintiffs are insolvent; and the other six and the defendant are entitled to an application of the whole sum of $300 as a payment. There is a balance of contribution to be paid the defendant by the six solvent plaintiffs; for the collection of that balance, he should not be put to more litigation; and a complete adjustment cannot be made in assumpsit. There should be a computation of the balance due him; that amount should be deposited with the clerk for him; and when the deposit is made, there should be a decree that the note be deposited with the clerk to be cancelled. *Strafford* v. *Welch*, 59 N. H. 46. Here is work for the bill in equity which was tried with the assumpsit, and which may be allowed as an amendment of the declaration in that action. *Metcalf* v. *Gilmore*, 59 N. H. 417.

The defendant's motion, that the plaintiffs be required to elect whether they would try the matters in controversy on the declaration at law, or on the bill in equity, was rightly denied. They were properly allowed to avail themselves of both forms of action, subject to the modes of trial to which either party was entitled. A plaintiff may need an action of contract and an action in tort, or counts in both forms, to meet the meritorious contingencies of his case. *Rutherford* v. *Whitcher*, 60 N. H. 110. A final adjustment and decree will be made at the trial term.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.