## GEORGE CAHEN, Respondent, v. JOHN R. PLATT et al., Appellants.

Where a vendee has received and accepted under a contract of sale a portion of the goods contracted for, the fact that the goods so accepted were of a quality inferior to that called for by the contract does not authorize him to repudiate the contract altogether, and to refuse to accept the residue: he may demand goods of the stipulated quality, and if the balance when offered prove to be of an inferior quality, may refuse to accept; but if such as the contract calls for, he is bound to receive them.

Plaintiff, at New York, contracted to sell to defendants a quantity of glass, to be delivered at Antwerp, and to be paid for in New York on receipt of invoice and bills of lading. After delivery and acceptance of a portion, defendants notified plaintiff not to ship, and refused to take the residue. In an action upon the contract, held, that the proper measure of damages was the difference between the contract price and the market price at the time and place of delivery.

The evidence in such case is not confined to the market price at the precise time and place of delivery; but where it is impracticable to show this, evidence of the price for a brief period before or after that time, and at places not distant, or in other controlling markets, is competent, not for the purpose of establishing a market price at another time and place, but for the purpose of showing the market price at the

time and place of delivery. Where, therefore, there is no difficulty in making the proof, and the market price at the time and place of delivery is shown, it must control.

(*Cahen* v. *Platt et al.*, 8 J. & S., 483,) reversed.

(Argued April 9, 1877; decided April 17, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 8 J. & S., 483.)

This action was brought to recover damages for the alleged breach of a contract of purchase and sale.

The facts appear sufficiently in the opinion.

*Wm. P. Chambers*, for the appellants. A warranty can be predicated as to the quality of the glass upon the contract proved. (*Day* v. *Pool*, 52 N. Y., 416; *Dounce* v. *Dow*, 57 id., 16; *Gurney* v. *At. & G. W. R. Co.*, 58 id., 358.) The inquiry as to price was limited to that at the place of delivery. (*Sedg. on Dam.* [4th ed.], 317; *Story on Sales* [4th ed.], § 436; *Gregory* v. *McDowell*, 8 Wend., 435; *Wemple* v. *Stewart*, 22 Barb., 154; *Deifendorff* v. *Gage*, 7 id., 21; *Latlin* v. *Davis*, Lal. sup. to H. & D., 12; *Dunstan* v. *McAndrew*, 44 N. Y., 72; *McNaughten* v. *Cassidy*, 4 McL., 530.)

*Jno. E. Parsons*, for the respondent. As no objection was made to the glass for a long time, and no offer made to return it, defendants are precluded from alleging that what they received was inferior. (*Reed* v. *Randall*, 29 N. Y., 358; *Pike* v. *Nash*, 1 Keyes, 355; *Hargous* v. *Stone*, 5 N. Y., 73; *Sprague* v. *Blake*, 20 Wend., 61.) The words in the contract "to be of approved standard quality," did not constitute a warranty. (*Prideaux* v. *Burnett*, 1 C. B. [N. S.], 613; *Chanter* v. *Hopkins*, 4 M. & W., 399; *Hasting* v. *Lovering*, 2 Pick., 214; *Reed* v. *Randall*, 29 N. Y., 358; *Day* v. *Pool*, 52 id., 416; *Muller* v. *Eno*, 14 id., 597; *Rust* v. *Eckler*, 41 id., 488; *Fiedler* v. *Starkin*, 1 H. Bl., 17;

*Waring* v. *Mason*, 18 Wend., 425; *Kellogg* v. *Denslow*, 14 Conn., 411; *Thornton* v. *Wayne*, 12 Wheat., 183.) The difference between the price at New York and the contract price, was the measure of damages. (*Dana* v. *Feidler*, 12 N. Y., 48; *Sedg. on Dam.*, 316; *Converse* v. *Prettyman*, 2 Minn., 229; *Dey* v. *Dox*, 9 Wend., 129; *Davis* v. *Shield*, 24 id., 322; *Chit. on Con.* [11th ed.,], 621.

EARL, J. In September, 1872, at the city of New York, the plaintiff sold to the defendants 10,000 boxes of glass, at seven and one-half per cent. discount from the tariff price of July, 1872, to be paid for in gold, at New York upon delivery of invoice and bill of lading, by bills of exchange on Antwerp. The glass was to be of approved standard qualities, and was to be shipped on board of sailing vessels at Antwerp, and to be at the risk of the defendants as soon as shipped, and they were to insure and pay the freight and custom duties. The glass was to be delivered during the months of October, November and December, 1872, and January, 1873. In pursuance of this contract, the plaintiff delivered to the defendants 4,924 boxes of glass, for which they paid. They refused to receive any more, and this action was brought to recover damages consequent upon such refusal.

The defendants claimed, and gave evidence tending to prove, that the glass delivered was not of approved standard quality, and hence that they had the right to refuse to take the balance.

While some months after the glass was delivered the defendants complained of its quality, they at no time offered to return it, or gave plaintiff notice to retake it. They received it under the contract, and it is not important in this action to determine, as no counterclaim is set up, whether or not a right of action for damages on account of the inferior quality of the glass survived the acceptance. The fact that the glass delivered and received upon the contract was inferior, did not give them the right to repudiate

the contract altogether. They could demand better glass, and when the plaintiff offered to deliver the balance, if it was inferior, they could refuse to accept it. But if plaintiff was ready and willing to deliver for the balance such glass as the contract called for, they were bound to receive it. Here the plaintiff requested them to take the balance of the glass, and they refused to take any more, and thus repudiated and put an end to the contract. There was no proof that the plaintiff insisted upon delivering inferior glass, or that he was not ready and willing to deliver glass of the proper quality. They did not take the position that they were willing to receive glass of approved standard quality, but refused to take any more glass under the contract. There was, therefore, such a breach of contract as entitled the plaintiff to recover such legal damages as he sustained by the breach.

The only other question to be considered is whether a proper rule of damages was laid down by the court at the trial.

The contract was made in New York, and it was doubtless contemplated by the parties that the glass would be carried to New York. But the plaintiff was not bound to deliver it there. His delivery was upon shipboard at Antwerp, and after the glass was shipped the defendants could transport it to any part of the world. It was then at their risk, and they were liable to pay for it, although it should be lost. After plaintiff had shipped the glass, all he was bound further to do, to entitle him to payment, was to present to the defendants at New York the invoices and bills of lading of the glass.

Here the balance of the glass was not actually delivered. The defendants notified plaintiff not to ship, and absolutely refused to take any more, and hence the glass remained in Belgium. The general measure of damages in such a case is the difference between the contract price and the market price at the time and place of delivery. This measure is adopted as one that will generally give complete indemnity to the

seller. He can dispose of the commodity contracted to be sold at the market price, and his damage will be the difference between the price thus obtained and the price he would have received if the contract had been performed. Evidence as to the price need not be confined to the precise time when the contract was to have been performed. It may sometimes be impracticable to show the price at the precise time, and hence evidence of the price for a brief period before and after the time may be given, not for the purpose of establishing a market price at any other time, but for the purpose of showing as well as practicable the market price on the day the contract was to have been performed. So it may not always be practicable to show the price at the precise place of delivery. There may have been no sales of the commodity there, and hence evidence of the price at places not distant, or in other controlling markets may be given, not for the purpose of establishing a market price at any other place, but for the purpose of showing the market price at the place of delivery. (*Dana* v. *Fiedler*, 12 N. Y., 40; *Dustan* v. *McAndrew*, 44 N. Y., 72; *Durst* v. *Burton*, 47 N. Y., 167.) Here there was no difficulty. There was a market price at the place of delivery. The defendants proved that the market price there was thirty-seven and one-half per cent. off from the tariff rate, and the plaintiff proved that the market price in New York was fifty per cent. off. The court charged the jury that the plaintiff was entitled to recover the difference between the contract price and the market price in the city of New York, and this charge gave the plaintiff several thousand dollars more than he could upon the evidence have recovered if the court had charged that the market price at Antwerp should be taken instead of that at New York. In this charge, which was properly excepted to, the court erred, and for this error the judgment must be reversed and new trial granted, costs to abide event.

All concur.

Judgment reversed.