WILLIAM BROWNLEE v. HENRY BOLTON AND DONALD McRAE.

*Right of re-sale—Measure of damages—Inspection.*

A vendor's right of re-sale must be exercised in good faith and at such time, by such methods and under such circumstances as are most likely to produce the fair value of the property; and he has the burden of showing that it was so exercised.

A contract for delivery of timber " on the rail " of a vessel does not, in the absence of express provision, contemplate that it shall be inspected for acceptance at any later stage.

The usual measure of damages where merchandise has to be resold, on the failure of the contract purchaser to take it, is the difference between its contract price and its market value at the time and place fixed by the contract for delivery; but if the contract fixes the time for full payment, and the vendor elects to rest upon his right as an unpaid vendor and not to hold the merchandise for delivery as the purchaser may require it, the time of default in payment is the proper one for fixing the difference between the contract price and the market price.

Error to Alpena.    Submitted June 8.    Decided Oct. 6.

ASSUMPSIT.    Defendant brings error.    Reversed.

*James H. McDonald* for plaintiff in error, as to the measure of damages, cited: Benj. on Sales, § 758; *Haskell v. Hunter* 23 Mich. 305; *Rider v. Kelly* 32 Vt. 268; *Mallory v. Lord* 29 Barb. 465.

*Kelley & Clayberg* for defendants in error.

GRAVES, J.    The parties contracted as in the margin* con-

*This agreement, made this fourth day of August, 1871, by and between Bolton & McRae, of Alpena, Alpena county, Michigan, of the first part, and William Brownlee, of Detroit, Michigan, of the second part, witnesseth as follows, to wit: the said party of the first part agrees to deliver on rail of vessels furnished by the party of the second part one hundred thousand cedar posts at Nine-mile Point, and at other places suitable for loading, for the sum of eight cents each, the first cargo to be delivered within fifteen days after the opening of navigation, 1872, and the balance to be ready by the first of July, 1872. And the said party of the second

cerning the sale of cedar posts and telegraph poles and on occasion of the first shipments Bolton and McRae caused the posts to be inspected by a disinterested person as they were put on board. But Brownlee claimed that their agreement with the contract must be settled by inspection at the place or places of destination, and he threw out a large number as culls, and made a charge for their handling and dockage. Bolton and McRae asserted that the place of shipment was the place of acceptance, and that they would not submit to have the inspecting for acceptance transferred to whatever points Brownlee might select for their destination; and they proposed that if Brownlee would concur in the choice of an inspector at the point of shipment they would pay half the expense. But their offer was refused and Brownlee stopped sending vessels, and the contract was not carried out. After several years and in 1876 Bolton and McRae brought this action on the contract to recover damages for Brownlee's alleged refusal to provide vessels and accept and pay for the posts.

The substantial defense before the jury was that the further prosecution of the contract was given up and abandoned by mutual consent, but this was negatived by the finding. The court decided that the contract contemplated that all

---

part agrees to furnish vessels, and to have them all shipped by the first day of July, 1872; and the said party agrees to pay for them on delivery; and if said party fails to furnish vessels before the first day of July, 1872, he will pay for those unshipped, said party of the first part to deliver them on the rail as aforesaid, and also agrees to give all vessels good dispatch. And the said posts are to be seven and one-half feet long and four and one-half inches and upwards at the small end in diameter, good, sound, merchantable timber. And the said party of the first part will get out what telegraph poles they can, twenty-five and thirty feet long (25 and 30 feet), and five inches through at the top end; to be sound, live timber, peeled and well trimmed and straight; and the said party of the second part agrees to pay for same telegraph poles the sum of forty-five cents each, to be one-half thirty feet long. And (if) the said party of the first part, if possible, shall cut all posts over eight inches through, four and one-half (4½) feet long, these to be perfectly sound, for the sum of eight (8) cents each; all of the above to be delivered on the rail of vessels as aforesaid.

In witness whereof, the said parties have hereunto set their hands and seals, the day and year first above written.

BOLTON & McRAE.
WILLIAM BROWNLEE.

Witness: A. W. SMITH.

inspection for the purpose of complete acceptance should be at or before delivery and reception on board, and did not intend that it might be made at such distant or indefinite points as Brownlee might make the place or places of destination, and this is the right construction. There was no legitimate evidence of custom to influence the question, and if there had been it cannot be assumed that the terms of the contract would have authorized it; and so far as conduct and correspondence go, there is no implication, on any fair view of it, that Bolton and McRae understood the arrangement to be as claimed by Brownlee, or intended to waive the application of their construction to future deliveries.

The cause of action insisted on was exclusive of the telegraph poles and of the posts actually shipped. Bolton testified that in the fall of 1874 or 1875 they sold to Montgomery of Detroit the posts Brownlee had failed to take, and that the net proceeds were $4\frac{3}{4}$ cents each. No other witness testified concerning this sale, and whether it was public or private was not explained. There was no evidence of the actual condition the posts were in at that sale, nor any evidence of their condition then as compared with what it was in the summer of 1872. Bolton was asked on cross-examination what terms were made with Montgomery about the length, diameter and soundness, but the inquiry was excluded on objection. It was not shown that any notice of sale to Brownlee was given or attempted, or that the circumstances of the transaction were such as to create a probability that the price obtained was a fair one. Bolton was allowed to state the value of posts after the first of July in 1872, but Comstock, a witness produced by Brownlee, was for some reason which is not apparent, not allowed to do so. The jury were charged that in case of finding Bolton and McRae were entitled to recover, the measure of damage would be the difference between the contract price and the price obtained on the resale. The substantial effect of this instruction was to require the jury, in case of their being satisfied that Bolton and McRae ought to recover, to accept Bolton's account and regard the price so stated as having been obtained at the sale

made from two to three years after the transaction, as conclusive of the depreciation of the posts in value from the contract price, and as deciding how much Bolton and McRae might compel Brownlee to pay on account of his failure of performance in 1872.

The instruction was not authorized by the evidence. At the outset it was material to inquire whether the expedient of a resale, in view of the circumstances, was within a reasonable time. But apart from this the case was barren of facts to afford any ground for argument that the real condition and the steps taken were such that in justice the price could be held binding on the interest of Brownlee. The state of facts in the record did not permit the application of the doctrine of resale, and there is no occasion for a particular examination of it. It is now sufficient to say generally that the vendor's right of resale must be exercised in good faith and in such time and manner and under such circumstances and by such methods as will be best calculated to produce the fair value of the property, and that in case he seeks to avail himself of it before a jury it is incumbent on him to adduce the necessary facts to show that in exercising the right this manner was observed. Of course the plaintiff in error might have acquiesced in the rule given by the court, but he did not, and the question is what ruling should have been made.

The answer is plain. The law on the subject is well settled. In the first place, evidence should have been admitted to explain the condition of the property and its market value at the place or places of shipment on the first day of July, 1872, and the jury should have been told that the general measure of damage was the difference between the contract price and the price on board according to market value on the first of July, 1872, at the contract place or places where the posts were in readiness to be tendered. There was no room for any rule more favorable to defendants in error. *Cahen v. Platt* 69 N. Y. 348.

According to the agreement, in case Brownlee failed to provide vessels before July first he was bound to pay at that

time for whatever posts remained unshipped, and Bolton and McRae were still to put them on board. The time was hence fixed for full payment whether vessels were or were not provided by Brownlee, and as Bolton and McRae elected to hold the posts to preserve their right as unpaid sellers, and did not elect to hold them for delivery to Brownlee as he might require it, the time when default in payment occurred was the proper one for getting at the difference between the contract price and the market price on board. No further observations are necessary.

The judgment must be affirmed with costs and a new trial granted.

The other Justices concurred.