Merrimack, }
Dec., 1897. }

TRIPP & a. v. FORSAITH MACHINE CO.

A declaration in assumpsit may be amended by filing a bill in equity for the reformation of a contract declared on, when justice requires it.

Rulings with reference to the reception of evidence upon an issue that proves to be immaterial furnish no ground for setting aside the report of a referee, if the objecting party is not prejudiced thereby.

In an action for goods sold, the measure of damages is the difference between the contract price of the goods and their market value at the time the vendee refused to accept them; and this amount cannot be enhanced by any act of the vendor in respect to the goods after such refusal.

ASSUMPSIT, upon an order dated March 28, 1893, sent by the defendants to the plaintiffs and accepted by them, as follows: "Please furnish us as and when wanted by us ten to twelve carloads, or the entire cut for the year, of clapboards of your own make, and to be as good as those we have had of you in the past. The prices delivered on cars at Boston points to be as follows: [naming them]. (Delivery to be made before February 1, 1894.)" Trial by a referee, who found $797.22 due to the plaintiffs.

Subject to the defendants' exception, the plaintiffs were allowed to amend by filing a bill in equity, praying that the order be reformed so as to read as follows: "Please furnish us as and when wanted by us the entire cut for the year of clapboards of your own make, and to be as good as those we have had of you in the past. Said entire cut for the year is estimated to be ten or twelve carloads. We are to call for and accept the entire cut for the year, before February 1, 1894. The prices delivered on the cars at Boston points to be as follows: [naming them as in the original order]." It was found that the allegations of the bill were true, and that the contract should be reformed so as to read as stated in the bill.

The plaintiffs fulfilled, and were ready and willing to fulfill, the terms of their contract in all respects; but just after February 1, 1894, the defendants refused to take any more of the clapboards, and some 261 M of the less desirable portion of them were left on the plaintiffs' hands. Between the date of the contract and February 1, 1894, the market price of clapboards fell below the prices specified in the contract. The plaintiffs claimed that the defendants' refusal was due to the fall in prices. This the defendants denied and offered to prove the prices by the quotations in a newspaper, which were excluded subject to their exception. As tending to sustain the plaintiffs' theory in regard to the de-

fendants' refusal, the plaintiffs were allowed, subject to exception, to put in evidence a letter of the defendants, dated August 24, 1893, addressed to one Ward, a dealer in clapboards, counter-manding an order for clapboards, and saying: " You of course appreciate as well as any one the condition of trade, and while we regret being compelled thus to countermand to you, see no other recourse."

July 17, 1895, the plaintiffs sold all the clapboards of the cut of 1893 which the defendants refused to take, at public auction. A representative of the defendants was present at the sale and purchased some of them. The defendants excepted to all the evidence introduced as to this sale.

The referee assessed the damages, as follows:

| | | |
|---|---:|---:|
| Contract price of clapboards, not taken by the defendants | | $1,834.09 |
| Sum for which clapboards were sold at the auction sale | $1,307.98 | |
| Less interest on $1,307.98, from February 1, 1894, to July 17, 1895 | 114.87 | |
| | | 1,193.11 |
| | | $670.81 |
| · Error in figuring, $29.83. | | |
| Interest due on notes | | 43.83 |
| | | $714.81 |
| Error in figuring, $0.17. | | |
| Interest, February 1, 1894, to March 9, 1895 | | 47.41 |
| Taxes | | 10.00 |
| Expenses of storage and sale | | 25.00 |
| | | $797.22 |

The questions arising upon the report were reserved.

*Albin, Martin & Howe,* for the plaintiffs.

*Burnham, Brown & Warren,* for the defendants.

CARPENTER, C. J. The filing of a bill in equity for the reformation of the contract was properly allowed by the referee. P. S., *c.* 222, *s.* 8; *Ib., c.* 227, *s.* 10; *Metcalf* v. *Gilmore,* 59 N. H. 417; *Brooks* v. *Howison,* 63 N. H. 382; *Howard* v. *Britton,* 67 N. H. 484, 488. It being found that the plaintiffs fully performed their part of the contract, it is immaterial whether the defendants' refusal to perform their part was occasioned by a decline in the market value of clapboards or by some other cause. The quotation of prices of clapboards in the newspaper and the defend-

ants' letter to Ward related to an immaterial issue, and the rulings as to their admission in evidence furnish no ground for setting aside the report. Neither party was prejudiced by the exclusion of the evidence in the one case, or by its reception in the other.

There was error in the assessment of damages other than in the figuring. The plaintiffs were entitled to recover the difference between the contract price of the clapboards and their market value at the time when the defendants refused to accept them, i. e., on or about February 1, 1894. The price obtained at the auction sale was evidence of their value at that time and also of their value February 1, 1894, although not conclusive. On what ground the referee deducted from this price the interest thereon ($114.87) from February 1, 1894, to the date of the auction, is not apparent. There is no presumption that the value increased at the rate of six per cent per annum, and unless there was evidence tending to show that it did, the deduction was erroneous.

Upon the defendants' refusal to accept the clapboards, the plaintiffs were at liberty to dispose of them, and became entitled to damages for the breach of the contract. The plaintiffs could not by any acts of theirs enhance the damages. They kept the clapboards after that at their own risk and cost. Had the clapboards been destroyed by fire, the loss would have been theirs and not the defendants'. They cannot charge the defendants with the storage of their own goods, nor with the taxes upon them. Neither are the defendants chargeable with the expense of the auction sale as such. It must be deducted from the gross proceeds in order to obtain the net auction price; but that is quite another and different thing in principle.

Assuming that the market value of the clapboards was the sum which they brought at the auction sale, the plaintiffs' damages would be as follows:

Contract price of the clapboards not taken by
    the defendants . . . . . . . $1,834.09
Less market value as shown by sale . . . . 1,307.98
                                       $526.11
Interest due on notes (not questioned) . . . 43.83
                                       $569.94

To which interest should be added from February 1, 1894, to the date of judgment. The plaintiffs may, if they so elect, have judgment on the report accordingly. Otherwise, the report must be set aside on the question of damages only.

*Case discharged.*

All concurred.