ELIZABETH H. MOORE, Appellant, v. JOHN A. POTTER, Individually and as Receiver of THE AMERICAN LACE MANUFACTURING COMPANY, Respondent.

1. SALE — VENDOR AS AGENT OF VENDEE IN MAKING A RESALE ON BREACH OF CONTRACT. To say that the vendor of personal property becomes the agent of the vendee in making a resale of property which the latter refuses to accept under his contract, in order to ascertain the amount of damages, is to be regarded at most as a mere fiction of law, and the beneficial title does not pass to the vendee.

2. RECEIVERS — REFUSAL TO ACCEPT PROPERTY UNDER CONTRACT. The title to property which a receiver refuses to accept and pay for under the contract does not pass to the receiver so as to preclude the vendor from making a resale of the property without leave of court, in order to ascertain the amount of his loss by breach of the contract.

3. RESALE OF PROPERTY ON BREACH OF CONTRACT BY RECEIVER NOT CONTEMPT. The resale by a vendor, to fix the amount of his damages on the refusal of a receiver of the vendee to receive and pay for the property, is not a disobedience of the order appointing the receiver and prohibiting the transfer of any of the property of the vendee, except to deliver it to the receiver.

*Moore* v. *Potter*, 87 Hun, 334, reversed.

(Argued March 15, 1898 ; decided April 19, 1898.)

APPEAL from an order of the late General Term of the Supreme Court in the first judicial department, entered June 26, 1895, sustaining defendant's exceptions to a verdict in favor of plaintiff, directed by the court, ordered to be heard in the first instance at General Term, and granting a new trial.

In December, 1892, Albert S. Moore, the plaintiff's assignor, entered into an executory contract with the American Lace Manufacturing Company to sell it fifty thousand pounds of yarn at twenty cents per pound, to be delivered in weekly shipments of four thousand pounds each, and paid for by notes at sixty days.

Weekly deliveries in pursuance of the contract were commenced and continued until June, 1893, when, in consequence of a strike at its mill, the corporation requested a temporary discontinuance of shipments under the contract. At that time all the yarn purchased except ten thousand one hundred pounds had been delivered and paid for. In the following month the plaintiff's assignor wrote the corporation calling its attention to the fact that the strike had ended, and asking for advices in regard to further shipments of yarn. In reply the corporation stated it was not in a position to take it then, but would notify him when he might resume them. No such notification was given, but on the sixth of November, 1893, proceedings for a voluntary dissolution of the company were instituted, and the defendant was appointed its temporary receiver to conduct its affairs until the further order of the court.

Three days later the plaintiff's assignor wrote the defendant asking whether he was in a position to take the yarn and pay for it according to the terms of the contract. To this he replied: "As receiver I am not in a position to receive any more yarn under your contract." Five days later the assignor notified the defendant of the receipt of his letter declining to receive any more yarn upon the contract, and stated that he would be obliged to sell the undelivered portion and hold him responsible for any loss he might sustain. He also stated that he would wait four days to receive any instructions under which the defendant might desire to have the sale made. On the twenty-second of that month, which was two days after the expiration of that time, the assignor again wrote the defendant stating that his letter left him no alternative but to protect himself by a sale of the yarn called for by his con-

tract, and that he would give the defendant notice of the time
and place of the sale. That notice was subsequently given,
and the remainder of the yarn was sold. Notice of the time
and place of the sale was duly given, and the sale was prop-
erly advertised. The net proceeds were $1,247.70, while the
contract price was $2,020, thus leaving the sum of $772.30 as
the amount of loss sustained by the plaintiff's assignor by rea-
son of the defendant's failure to fulfill the contract made by
the company. The property was purchased by Mr. Whitte-
more, who attended the sale for the purpose of buying it for the
plaintiff's assignor. On the twentieth of November, 1893, the
latter was served with a copy of the order appointing the defend-
ant such temporary receiver, which contained a provision enjoin-
ing all persons from collecting any of the debts of the cor-
poration, from paying out, disposing of or transferring any of
its property, except to deliver the same to the receiver, and
also enjoined all the creditors of the company from commenc-
ing suits, issuing executions, or levying upon, seizing or sell-
ing, or proceeding in such actions until the further order of
the court.

On March 5, 1894, the corporation was dissolved by a final
order of the Supreme Court, and the defendant was continued
as its permanent receiver. He advertised for claims against
the corporation, and the plaintiff's assignor duly presented a
properly verified statement of the claim upon which this
action is based. The defendant wholly ignored it, paid the
other creditors in full, and, although he had sufficient money
remaining in his hands to pay the assignor's claim, refused to
do so. The plaintiff then applied for and obtained leave of
the court to bring this suit against the defendant as receiver,
and this action was commenced.

At the conclusion of the evidence the defendant asked the
court to direct a verdict in his favor upon the ground that the
plaintiff's assignor had no power to sell the property without
the consent of the court, and also on the ground that the sale
was collusive. This motion was denied. Thereupon the
court directed a verdict for the plaintiff for $826.60, and

ordered the exceptions to be heard in the first instance at the General Term. The case subsequently came on for argument before that court, which sustained the defendant's exceptions and granted a new trial.

Albert S. Moore transferred to the plaintiff his cause of action against the defendant, and the claim upon which it was based. She was thereupon substituted as plaintiff in this action. From the judgment entered upon the decision of the General Term the present plaintiff appealed to this court.

*R. Burnham Moffat* for appellant. Selling the undelivered balance of the yarn " for account of whom it might concern " was not a violation of the injunction order, inasmuch as the title to the goods sold had not gone out of the plaintiff. (*Anderson* v. *Read,* 106 N. Y. 333; *Riendeau* v. *Bullock,* 20 N. Y. Supp. 976; *Joyce* v. *Adams,* 8 N. Y. 291; *Kein* v. *Tupper,* 52 N. Y. 550; *Dustan* v. *McAndrew,* 44 N. Y. 72; *Hayden* v. *Demets,* 53 N. Y. 426; *Van Brocklen* v. *Smeallie,* 140 N. Y. 70; *Mason* v. *Decker,* 72 N. Y. 599.) Any violation of the order which plaintiff may have been guilty of was at most a criminal and not a civil contempt, and, therefore, is not available as a defense. (*People ex rel.* v. *Oyer & Terminer,* 101 N. Y. 245; *People ex rel.* v. *McKane,* 78 Hun, 160.) Before a civil contempt can be availed of as an affirmative defense to a common-law action, the fact of such contempt must have been adjudged and the penalty fixed. (Code Civ. Pro. §§ 14, 2266–2292; *Wolf* v. *Buttner,* 6 Misc. Rep. 119; *Dinsmoor* v. *C. T. Assn.,* 14 N. Y. Supp. 676; *Boon* v. *McGucken,* 67 Hun, 251; *H. M. Co.* v. *Venner,* 74 Hun, 458; *Fischer* v. *Raab,* 81 N. Y. 235; *Hovey* v. *Elliott,* 167 U. S. 409; *Walker* v. *Walker,* 82 N. Y. 262; *Brinkley* v. *Brinkley,* 47 N. Y. 40; *Wayland* v. *Tysen,* 45 N. Y. 282; *Thompson* v. *E. R. R. Co.,* 45 N. Y. 471.)

*Leopold Wallach* for respondent. It is immaterial that the property had not been reduced to the manual possession of the plaintiff. (*Richards* v. *People,* 81 Ill. 554; *Hazelrigg* v. *Bron-*

*augh,* 78 Ky. 62, 63.)  Plaintiff is estopped to deny the title of the American Lace Manufacturing Company to the yarn.  His sale of the yarn was in effect an election to affirm the contract and treat the yarn as the property of the company. (*Dustan* v. *McAndrew,* 44 N. Y. 72; *Lewis* v. *Grieder,* 51 N. Y. 231; *Hayden* v. *Demets,* 53 N. Y. 426; *Mason* v. *Decker,* 72 N. Y. 595; *Van Brocklen* v. *Smeallie,* 140 N. Y. 70; 144 N. Y. 72.)  The objects of the receivership and injunction were to maintain the affairs of the company in *statu quo* and to preserve its property for those who should be found entitled to them. (*Van Veghten* v. *Howland,* 12 Abb. [N. S.] 461; *Lenox* v. *Notrebe,* Hemp. 225; *Taylor* v. *P. & R. R. Co.,* 7 Fed. Rep. 381; *Latham* v. *Chafee,* 7 Fed. Rep. 525; *N. P. R. Co.* v. *City of Spokane,* 52 Fed. Rep. 428; *Richards* v. *People,* 81 Ill. 554; *Carson* v. *N. Y. T. E. Co.,* 74 Hun, 536.)  The pretended sale of the yarn was in effect a proceeding to foreclose the plaintiff's equitable lien on it, and, as such, a violation of the injunction. (*Palmer* v. *Hand,* 13 Johns. 433; *Carlisle* v. *Kinney,* 66 Barb. 363; *Noe* v. *Gibson,* 7 Pac. Rep. 411.)  The rules in relation to punishment for contempt and the distinction between civil and criminal contempts have no application to this case. (*F. L. & T. Co.* v. *B. & M. T. Co.,* 148 N. Y. 315; *People* v. *C. A. L. Ins. Co.,* 5 App. Div. 273; *P. P. Co.* v. *Seabury,* 43 Hun, 611.)  The pretended sale of Wittemore being in fact only colorable, and the plaintiff having been the real purchaser, that sale was absolutely without effect upon the rights of the parties. (*Bryan* v. *Baldwin,* 52 N. Y. 232; *Duncomb* v. *N. Y., H. & N. R. R. Co.,* 84 N. Y. 190; *Roach* v. *Duckworth,* 95 N. Y. 391; 52 N. Y. 232.)

Martin, J.  The sole ground upon which the General Term reversed the determination of the trial court and directed a new trial was, that the plaintiff's assignor, having been served with the order appointing the defendant as receiver, could not sell the property, which was the subject of the contract of purchase and sale, without leave of the

court and thereby acquire any rights against the defendant, but that he was guilty of a contempt in making the sale, and, therefore, the court would not aid him to reap its fruits. This determination is based alone upon the defendant's exception to the refusal of the trial court to direct a verdict in his favor upon the grounds : 1. That the plaintiff's assignor had no power to sell the property without the consent of the court, and, 2. That the sale was collusive. No effect was given to the last ground by the court below. It is plain that the evidence was insufficient to justify a direction of a verdict in favor of the defendant upon the ground that the sale was collusive. Nor was it sufficient to authorize the submission of that question to the jury.

Therefore, the only question involved on this appeal is that upon which the General Term based its decision. It is well established by the decisions of this court that a vendor of personal property, when the vendee has declined to take the property and pay for it, ordinarily has the choice of any of three methods to indemnify himself against loss : 1. He may store or retain the property for the vendee and sue him for the entire purchase price ; 2. He may sell the property and recover the difference between the contract price and the price obtained upon a resale ; or, 3. He may keep the property as his own, and recover the difference between the market value at the time and place of delivery and the contract price. (*Dustan* v. *McAndrew*, 44 N. Y. 72, 78 ; *Lewis* v. *Greider*, 51 N. Y. 231, 237 ; *Hayden* v. *Demets*, 53 N. Y. 426, 431 ; *Cahen* v. *Platt*, 69 N. Y. 348, 352 ; *Mason* v. *Decker*, 72 N. Y. 599 ; *Quick* v. *Wheeler*, 78 N. Y. 305 ; *Porter* v. *Wormser*, 94 N. Y. 431, 442 ; *Ithaca Agricultural Works* v. *Eggleston*, 107 N. Y. 272, 276 ; *Tuthill* v. *Skidmore*, 124 N. Y. 148, 154 ; *Van Brocklen* v. *Smeallie*, 140 N. Y. 70.) The plaintiff's assignor sought to avail himself of the second method, by selling the property at the best price he could obtain and then recovering of the defendant the difference between the price thus obtained and the contract price.

It is to be observed that in many of the cases cited it has been said that in thus selling the property the vendor acts as the agent of the vendee for that purpose. Clearly, the use of the words " as agent of the vendee " was not intended as a determination that the relation between the parties was that which ordinarily exists between a principal who owns property and an agent who may be authorized to manage or sell it. But it is a general expression which has been somewhat inaccurately used to define the right of a vendor to make a resale and hold the vendee responsible for his loss. It is quite manifest that a resale made under such circumstances is not made by the vendor strictly as the agent of the vendee, but he acts for himself in disposing of the property for the purpose of ascertaining the actual damages he may sustain. Doubtless in making it the vendor would be bound to sell within a reasonable time, to exercise good faith to effect a sale at the best price he could obtain, to follow any proper instructions the vendee might give as to the time and manner in which it should be made, and to give credit upon the contract price for the amount received. His duties in making the sale may, in some respects, resemble those of an agent, and thus the expression that he acts " as the agent of the vendee " has arisen. That he owes the vendee the duty to thus conduct the sale is clear, but that his acts in making it can be properly regarded as the acts of an agent, as that word is generally understood, is quite otherwise. Surely the fact that a vendor might seek this remedy against an insolvent or doubtful vendee, would not confer upon the latter such a title as would enable him to demand and hold the property without complying with the terms of the contract. To say then that the vendor becomes the agent of the vendee in making the sale is not quite correct, and is to be regarded at most as a mere fiction of law, and the beneficial title does not pass to the vendee.

The first case in this state which has come to our notice relating to this subject is *Sands* v. *Taylor* (5 Johns. 395). In that case the right to make a resale and hold the vendee

responsible for the difference between the contract price and
the amount received upon a resale was considered and held to
exist by a unanimous court.   Several opinions were written.
Some of the judges expressed the view that, after a vendee
had refused to accept the property, the vendor became a trus-
tee or agent by necessity to sell the property, but that the
exercise of the right to sell was not a waiver of his rights
under the contract.   Others based this right, not upon any
principle of agency, but upon the existence of a common
usage, which was said to be convenient and reasonable and
should be sustained by the courts.   While the court unani-
mously held that the right of resale existed, there was some
difference of opinion as to the precise language which should
be employed in describing that right, or the principle upon
which it was founded, some holding that it existed by virtue
of a common usage which was sanctioned by the courts, while
others were of the opinion that the vendor became an agent
of the vendee by necessity.   It is quite obvious that the lan-
guage employed in that case has led to the use of the words
" as agent for the vendee " in stating this rule in subsequent
cases.   When, however, we consider the manner in which the
use of this phrase arose and the sense in which it was used,
it becomes quite apparent that it was employed merely for
the purpose of briefly describing the right which a vendor
possessed to make a resale.   It is clear that the court in that
case did not hold, or intend to hold, that the general relation
of principal and agent existed between the parties.   But even
if it could be regarded as proper in such a case to define the
position of a vendee as that of an agent by necessity, yet,
when the sense in which the term is used is understood, it is
plain that it is not to be regarded as an assertion that the vendee
becomes the absolute owner of the property by the act of the
vendor in thus seeking to establish the amount of his actual loss.
It would be manifestly unjust to hold that in such a case the
title passed to a vendee, and that the vendor could not adopt
this method of reducing the amount of his damage, and ascer-
taining the precise amount of his loss, without assuming the

risk which might follow if the title actually passed to the vendee without payment, upon the vendor's election to pursue that method of idemnifying himself. Moreover, even if it could be said that the title passed to the vendee, still the vendor would retain his lien for the purchase price that could be foreclosed by a sale, and which would continue in the vendor not only the right of possession, but the right to sell and hold the defendant for any deficiency that might arise. Although a vendor may elect to pursue that method of indemnifying himself against loss, the title still remains in him to an extent which would prevent the vendee from demanding or recovering the property sold without complying with the provisions of the contract. Therefore, the General Term erred in holding that the title to this property passed to the receiver, so that the vendor was unauthorized to pursue that method of ascertaining the amount of the loss for which the defendant should be held responsible without the consent of the court.

It is true that it has been held by this court that a sale of property under an execution without leave of the court, while the property is in the possession of a receiver, is illegal and void, although the levy was made before his appointment. ( *Walling* v. *Miller*, 108 N. Y. 173.) In that case it was said that persons having liens upon property had no right to interfere with its possession by a receiver without the authority of the court, and thus dissipate it and deprive the court of jurisdiction to administer it. It is, however, no authority to sustain the doctrine involved in the determination of the General Term. In the case at bar the receiver had no possession nor right of possession, and no title to the property in question, but had only the right to receive the property purchased by the corporation upon paying the agreed price. No fund or property that had passed into the hands of the receiver was attempted to be disposed of or sold. The property had never come into the possession or fallen within the jurisdiction of the court appointing him. It continued the property of the plaintiff's assignor, subject only to the power of the receiver to take it upon paying the consideration. The right to do so

62

he absolutely declined to exercise. When he did that, the plaintiff's assignor was entitled to recover the damages which he sustained by reason of a breach of the contract. One of the methods of ascertaining their amount was a resale of the property. This was the method pursued. The defendant was given notice of the time and place of sale, and had every opportunity to protect any interest which the corporation or he, as receiver, had. The result of the sale, as well as its purpose, was to ascertain and establish the amount of damages the plaintiff's assignor in fact sustained.

Moreover, that the doctrine of the *Walling* case has no application here is clearly established by the decision of this court in *Varnum* v. *Hart* (119 N. Y. 101). In that case it was claimed by a receiver that a sale of the property of the corporation under an execution after his appointment was absolutely void, but this court held that, as the sheriff had seized the property and had it in his possession at the time of the appointment of the receiver, the sale was not void, but at most should be held simply voidable.

It appears to us that there is no question of contempt in this case. No right of possession in the receiver was disturbed, and the plaintiff's assignor only asserted a legal right which he possessed as to the property. Its resale was but the assertion of that right, and cannot be properly held to be illegal and void on the ground that leave of the court was not first obtained. In discussing a similar question in *Chautauque Bank* v. *Risley* (19 N. Y. 369, 376), COMSTOCK, J., said : " It may be that the creditor should ask leave of the Court of Chancery before he proceeds to sell, or that the purchaser acquiring the title should make a like application before he brings his ejectment. If, however, he fails to do so, the question is merely whether the court will consider him in contempt and punish him accordingly. The sale itself is but the assertion of a legal right, and it cannot be illegal and void on the ground that the leave of an equitable tribunal is not first asked and obtained." Hence, it would seem that even if the plaintiff's assignor was guilty of contempt, yet as the rights which

he pursued were legal, the fact that he failed to obtain the consent of the court did not render his action void. While the order appointing the defendant as receiver of the corporation enjoined all persons having notice from transferring any of its property, except to deliver it to him, still it is manifest that the corporation had no such possession of, or title to, the property in question as would make a resale of it by the vendor a disobedience of that order.

We think the learned General Term erred in sustaining the exceptions and directing a new trial; that its order should be reversed and judgment is ordered to be entered for the plaintiff on the verdict of the jury, with costs to the appellant in all the courts.

All concur, except PARKER, Ch. J., not sitting.

Order reversed, etc.