## ALDEN SPEARE'S SONS CO. v. HUBINGER.

### (Circuit Court of Appeals, Eighth Circuit. March 28, 1904.)

### No. 1,978.

1. SALES—BREACH OF CONTRACT—DAMAGES—MARKET VALUE—SALE OF GOODS—
REASONABLE TIME.

   Where, on a breach of a contract of sale, the seller elects to sell the property at public sale for the purpose of establishing its market value, the sale, in order to be effective for that purpose, must be made within a reasonable period after the buyer has broken his contract, and the seller must exercise good faith and reasonable diligence to sell the goods for the best price obtainable.

2. SAME—INSTRUCTIONS.

   Where, after breach of a contract for the sale of starch on July 1, 1900, the seller did not sell the starch for the purpose of establishing its market value, until March, 1901, an instruction submitting the question whether the sale had been made within a reasonable time, so as to be binding on the buyer in an action for breach of contract, that the seller was required to use diligence to sell it at the best possible advantage, within a reasonable time after notice to the buyer, and that it was for the jury to say under all the circumstances whether the sale was made within a reasonable time, and that the fact that the buyer had some one representing him at the sale could not be held to be an acquiescence in it, was proper.

3. SAME—CONTRACTS—PARTIES.

   Where in an action for breach of a contract for the sale of starch the issue whether the starch was purchased by H. individually or by a corporation of which he was the president was properly submitted to the jury, which was left at full liberty to determine the question according to the evidence, as they saw fit, a statement of the judge in his charge that he thought that neither of the parties was satisfied with a telephone communication between H. and plaintiff's agent, during which H. gave the order, and that a letter written on behalf of the corporation the next day, confirming the purchase, really formed the contract, was not error.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

This case was tried in the lower court on a complaint filed by the Alden Speare's Sons Company, the plaintiff in error, which contained the following allegations: "On or about January 5, 1900, plaintiff sold to defendant ten car loads of wheat starch at the agreed price of 5½ cents per pound f. o. b. Indianapolis, Indiana, to be shipped on or before and after July 1, 1900, to J. C. Hubinger Company, Indianapolis, Indiana, as ordered by defendant. Said ten car loads of starch to aggregate 381,710 pounds, and was of the value of $20,-994.05. Upon the sale of the said ten car loads of starch to defendant, plaintiff purchased of the Crystal Springs Manufacturing Company, for the purpose of meeting its obligations to defendant, the aforesaid ten car loads of starch. Defendant refused and declined to accept and receive the said ten car loads of starch, and on or about the ―――― day of ――――, 1900, notified the plaintiff in writing not to ship said ten car loads of starch, and that he did not want and would not receive and accept same. On or about the 16th day of March, 1901, plaintiff, after due notice to defendant thereof at No. 369 Atlantic street, in the city of Boston, in the state of Massachusetts, sold the aforesaid ten car loads of starch at public sale, upon and for defendant's account, to the Liberty Oil Company at the price of four cents per pound, the best offer received therefor, for the sum of $15,268.40. The cost of transporting the said ten car loads of starch to Indianapolis, Indiana, would have been one-fourth cent per pound, or a total of $954.27. There is due plaintiff from defendant the sum of $4,771.38 together with 6 per cent. interest from March 16, 1901. Wherefore plaintiff demands judgment against the defendant for the sum of $4,771.38, together with 6 per cent. interest from date until paid,

and costs of suit." The defendant, by his answer, averred, in substance, that the starch in question was ordered by the J. C. Hubinger Company, a corporation, and not by J. C. Hubinger individually; that on February 24, 1900, the defendant and the said J. C. Hubinger Company notified plaintiff to make no further shipments of starch, and cancel the order; that subsequently, on or about April 20, 1900, they again notified the plaintiff that they did not desire any further shipments of starch under the aforesaid order, and that personal notice was given to the plaintiff's agent in Chicago on or about those dates last aforesaid that the J. C. Hubinger Company would not be able to take the starch; that the plaintiff, when thus notified to cancel the order, made no objection to the cancellation, and gave no notice that it would insist upon the fulfillment of the order; that long afterwards, and on or about July 28, 1900, the plaintiff and the defendant settled certain litigation which was pending between them in the courts of Iowa, and that at said settlement no notice was given to the defendant that the plaintiff had a claim against the defendant or the J. C. Hubinger Company growing out of the cancellation of the aforesaid order; that thereafter, on March 16, 1901, the plaintiff caused ten car loads of starch, which it claimed to have sold to the defendant, to be resold on account of the defendant; that no proper or sufficient notice of the sale was given to the defendant; and that the sale was not made in good faith, or in such a manner as to bind the defendant. The case was tried to the jury on the aforesaid issues, and resulted in a verdict in favor of the defendant below, who is also the defendant in error here.

W. J. Roberts (Almon W. Bulkley and Bulkley, Gray & More, on the brief), for plaintiff in error.

John E. Craig and Theodore A. Craig (James C. Davis, on the brief), for defendant in error.

Before SANBORN, THAYER, and HOOK, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It will be observed that the complaint on which the case was tried failed to show the market value of the starch at the time and place of delivery. Neither did it contain an allegation that there had been a decline in the market value of the commodity intermediate the sale and the time of delivery, nor an express allegation that the plaintiff had sustained damage. The action seems to have been brought on the theory that it was sufficient to allege that at the sale made in Boston in March, 1901, nearly nine months after the time of delivery specified in the contract, the starch did not bring as much as the contract price, and that this allegation alone entitled the plaintiff to recover the difference between the contract price and the price for which it had been sold. Counsel for the plaintiff in error concede that the damages recoverable for the breach of a contract of sale is the difference between the contract price and the actual market value of the commodity at the time and place of delivery. They contend, however, that when a contract of sale is broken the vendor may sell the article for the purpose of establishing its market value; that the market value may be proven in this way as well as by the testimony of witnesses, and that the sum bid for the starch at the public sale in Boston in March, 1901, was prima facie evidence of its value when the contract was broken, and that it showed a decline in the market value, and consequent damage.

Assuming, without deciding, that there might have been a recovery of substantial damages although it was not expressly alleged that the market value of the starch at the time and place of delivery was less

than the contract price, and although it was not expressly alleged that the plaintiff had sustained damage; and assuming farther that a vendor of merchandise, if the vendee declines to accept it, may cause the same to be sold for the purpose of establishing its market value—still, when property is thus sold by the vendor to establish its market value, the sale must be made within a reasonable period after the vendee has broken his contract, and in making the sale the vendor must exercise good faith, and do whatever may be done in the exercise of reasonable diligence to make the property sold bring the best price. Moore v. Potter, 155 N. Y. 481, 487, 50 N. E. 271, 63 Am. St. Rep. 692; Tripp v. Forsaith Mach. Co., 69 N. H. 233, 45 Atl. 746; Brownlee v. Bolton, 44 Mich. 221, 6 N. W. 657; McCombs v. McKennan, 2 Watts & S. 216, 37 Am. Dec. 505; Mechem on Sales, § 1650. In the case in hand it was the function of the jury to decide whether the starch in question was sold by the plaintiff company within such a reasonable period of time after July 1, 1900, and under such circumstances, as would warrant them in finding that the price bid at the sale was the fair market price of the starch at that time and nine months previously—that is to say, when the contract was broken. This question was in fact submitted to the jury. With reference to this phase of the case the trial court charged the jury as follows:

"Now, then, what is a reasonable time, so far as this case is concerned, is at least a question of fact for you, gentlemen. Here is a starch manufactured, it seems, from flour; possibly some other ingredients; I do not know as to that. They must offer it upon the markets if it is already manufactured. They must use diligence to sell it at the best possible advantage, and, if they intend to make a public outcry, and if it is sold at such a sale as that, within a reasonable time, they must give Mr. Hubinger notice that they intend to hold him for the difference between the contract price and what it sells for, so that he can do what to him seems proper to protect himself. The evidence is without conflict that there was no notice given until some time the next March. Now, that is a question for you to say, under all the circumstances, was that within a reasonable time? And, if not, then this auction sale in this building in the city of Boston would in no wise be binding upon Mr. Hubinger. The fact that he had some one there representing him will not be an acquiescence in it, because he would have a right to see what was going on; and if you find that that was an unreasonably long time after this contract had been canceled, then that auction sale would in no wise be binding upon Mr. Hubinger in fixing the amount of damages."

This instruction is criticised as having been erroneous. It is said that, if the sale of the starch was made within a reasonable time after the defendant had declined to accept it, the price which it brought was conclusive evidence of its market value at the time of the breach, and that, although the vendor may have suffered an unreasonable time to elapse before exposing it to public sale, yet the price bid for it at the sale was at least prima facie evidence of its value during the preceding nine months, and that the trial court erred in not instructing the jury to that effect. We are unable to assent to that view. If a vendor resorts to the expedient of selling property which the vendee has declined to accept, for the purpose of establishing its market value and the amount of his damages, he should do so within a reasonable period after the contract is broken. When the vendor retains the property sold for months after the vendee has declined to accept it, and then exposes it to sale, the law will hardly indulge in the presumption that

the value of the article has remained stationary in the meantime, and that the price realized is a fair test of the value of the article at the time of the breach. We are of opinion, therefore, that the trial court was right in directing the jury that the price which was bid for the starch in Boston in 1901 would not be binding on the defendant in fixing the amount of the damages, provided the jury found that the sale was not made within a reasonable time after July 1, 1900. The plaintiff company made no attempt to show that it had sustained damage otherwise than by proving that at the public sale in March, 1901, the starch had been sold to the highest bidder at 4 cents per pound, which was 1½ cents per pound less than the contract price. It seems to have relied for a recovery exclusively upon this evidence, and as the jury, acting under the instruction above quoted, most likely found that the sale was not made within a reasonable period, and was not binding upon the defendant for the purpose of fixing the amount of the plaintiff's damages, there was in fact no evidence before the jury which would have warranted them in finding that the plaintiff company had sustained any substantial damage such as could be recovered from the defendant.

The pleadings in the case presented another issue of fact, namely, whether the contract for the sale of the starch was made by Hubinger individually or with the J. C. Hubinger Company, and it is claimed that the trial court practically withdrew this issue from the jury by directing them that the contract was made with the company, and not with Hubinger. The record discloses that the order for the starch was first communicated over the telephone by Hubinger in person to the plaintiff's agent in Chicago, Ill., on January 5 or 6, 1900. At the conclusion of the message there was some difficulty with the wires, but Hubinger was understood to say that he would write to the agent that night. A letter was written that night or the following morning, and mailed at Keokuk, Iowa, where Hubinger resided, and where the J. C. Hubinger Company was also located and engaged in business. This letter was as follows:

"Keokuk, Iowa, Jan. 6, 1900.

"Alden Speare's Sons Co., Chicago, Ill.—Gentlemen: * * * You can book our order for 10 cars of wheat starch to be delivered between now and July 1st., allowing us 60 days time on each car, which time is the dating that we have to allow on our bills.

"I was adding this clause when phoning you in Chicago, but was cut off, so thought you might not have caught that part of the conversation. It is understood of course that the starch is to be thin boiling pure wheat starch and first class in every respect.

"Very truly,                  J. C. Hubinger Co."

At the commencement of his charge, in reviewing, in a general way, the circumstances under which the contract was made, the trial judge remarked casually, "So I think it is fair to say that, in view of the fact that neither of the parties were satisfied with the telephone talk, that this letter of the next day really forms the contract." Afterwards, however, the question whether the contract was made with Hubinger individually or with the Hubinger corporation, of which he was president, was submitted to the jury in the following language:

"It is claimed by the defendant that this contract was made by the Hubinger Company, a corporation. If that is true, then in no event can there be any

recovery by the plaintiff in this case. Mr. Horr, the representative of the plaintiff, says he understood, not only from past dealings, but from this conversation on the telephone on the 5th of January, that it was Mr. Hubinger as an individual. The letter here would indicate that it was done by the corporation. One of the letters of cancellation, or which is offered and contended to be a cancellation, on the 24th of February, is likewise signed by the corporation. The second letter of April 20th is signed by Mr. Hubinger as an individual. So that is one question of fact you gentlemen will determine—with whom was this contract made by the plaintiff, with the Hubinger corporation or with Mr. Hubinger as an individual? Because it makes no difference who they are in this corporation. So far as we know, Mr. Hubinger may or may not have owned all the stock. He may or may not have been the controlling officer. But if by the corporation, he, as an individual, under the laws of Iowa, would not be responsible for the corporation; at all events so far as this case is concerned. So you will determine that in your own mind, and if you find that it was by Mr. Hubinger as an individual then you will consider the case without reference to that question. If you find it was by the Hubinger corporation, your verdict will be for the defendant."

It is manifest, therefore, that the question whether the contract for the sale of the starch was made with the defendant as an individual or with the corporation of which he was president was submitted to the jury, and there seems to be no substantial basis for the contention that this issue was withdrawn from their consideration. The remark that was made by the trial judge at the commencement of the charge amounted to no more than an expression of opinion, but, as the jury were subsequently left to determine the issue as they thought proper, the plaintiff company has no just ground for complaint, since a trial judge is always at liberty to express his opinion on any issue of fact which arises in a case, provided the jury is ultimately left at full liberty to determine it.

After a careful examination of the record and the briefs, we have reached the conclusion that the jury must have found either that the plaintiff company had not sustained any damage in consequence of the alleged breach of the contract, or that the contract was in fact made with the J. C. Hubinger Company, and not with the defendant. The verdict can be accounted for, we think, on no other ground, and in our judgment these issues were properly submitted to the jury. The plaintiff company did not ask the trial judge to declare that it was, in any event, entitled to recover nominal damages, nor is this court asked to reverse the judgment below for that reason.

Under these circumstances no sufficient reasons exist for the reversal of the judgment below, and it is accordingly affirmed.