## S. M. FLEMING CO. *v.* S. O. EDMONDS *et al.*\*

### (*Nashville.* December Term, 1922.)

1. **SALES.** Holding millet seed ten months before resale after buyer's breach held unreasonable.

   Where buyer breached its contract for the purchase of millet seed about May 24th, at a time when there was a falling market for such seed, seller, failing to make resale of such seed until the following March, did not act within a reasonable time. (*Post, p.* 636.)

   Cases cited and approved: Moore v. Potter, 155 N. Y., 481; Tripp v. Forsaith Mach. Co., 96 N. H., 233; Brownlee v. Bolton, 44 Mich., 221; McCombs v. McKennan, 2 Watts & S., 216; Alden Speare's Sons Co. v. Hubinger, 129 Fed., 538; Gehl v. Milwaukee Produce Co., 116 Wis., 263.

2. **SALES.** Rule of recovery for buyer's breach of millet seed contract stated.

   Where millet seed was purchased in February at $3.15 per bushel, and about May 24th following buyer breached his contract, at a time when the market for millet seed was falling, and proof showed that May was perhaps the best month for the sale of such seed and that prices ordinarily declined thereafter, seller could recover the difference between the contract price and the market price of the seed during the latter part of May. (*Post, p.* 636.)

---

### FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County.— HON. JAS. B. NEWMAN, Chancellor.

---

\*On question of measure of damages for refusal to receive goods see note in 52 L. R. A., 246.

HOLLOWAY & COFFEY, for appellants.

R. H. CROCKETT, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The complainant is a grain dealer at Franklin, Tenn. Ransom Bros. likewise deal in grain and are located at Murfreesboro, Tenn. Edmonds deals in the same commodity and has his place of business at Eagleville, Tenn. In February, 1918, Ransom Bros. bought from complainant one thousand bushels of millet seed at $3.15 per bushel f. o. b. Franklin. Early in March and before delivery, Ransom Bros. sold these seed purchased from Fleming to Edmonds, and Fleming was notified of this fact. The seed were never taken out by Edmonds. They were held by Fleming in his warehouse at Franklin and after notice, were sold by Fleming in March, 1919, for $2.25 per bushel. Fleming brought this suit to recover the difference between the price at which the millet was finally sold and the contract price thereof together with insurance and storage charges. There was a decree in favor of the complainant, according to the prayer of the bill against Ransom Bros., but the bill was dismissed as to Edmonds. Ransom Bros. have appealed to this court.

Ransom Bros. first contend that they transferred their rights under this contract to Edmonds, and that this was acceptable to Fleming, and Ransom Bros. claim to be accordingly released. The proof does not establish a novation, nor any agreement by Fleming to release Ransom Bros. from responsibility of this contract.

It is contended by Edmonds that he called for the delivery of the grain repeatedly after he purchased it from Ransom Bros., but that Fleming was not ready to make delivery and asked for further time. Edmonds says that he had to purchase millet elsewhere to supply his trade by reason of Fleming's delay, and that Fleming thereby breached the contract and is entitled to no relief.

Fleming denies all this. He says that he was ready to comply with the contract and make delivery to Edmonds at any time; that he frequently called up Edmonds and urged that the millet be taken out; that on April 6, 1918, he sacked the millet and put it in a separate pile and for a month thereafter insisted on Edmonds taking it out.

Considerable proof is introduced by the parties to sustain their respective contentions. There is quite a conflict in the evidence. We have discussed it orally and think the weight of the proof sustains the contentions of Fleming.

Ransom Bros. appear to have been misled by communications received from Edmonds, and they supposed until about the middle of May, 1918, that Edmonds and Fleming had made some arrangement about the removal or storage of this millet. At that time they were notified by Fleming that Edmonds had not taken out the grain and Fleming demanded that the matter be closed up. He wanted his money. At this time Fleming was also urging Edmonds to pay him and get the grain out or store it.

About the middle of May Edmonds told Fleming to take the millet and go to hell with it, and in somewhat more polite language on May 24, 1918, Ransom Bros. notified Fleming that they considered themselves released from lia-

bility upon the contract. So that this contract was breached by the defendants as early as May 24, 1918.

The proof shows that May was perhaps the best month for the sale of millet seed and that prices ordinarily declined thereafter. In the case before us there was a sharp decline in price of this commodity during the summer and fall of 1918.

As heretofore stated, Fleming held the grain until March, 1919, before he sold it. He was entitled to hold it after Ransom Bros. and Edwards refused to take it, sell it, and charge Ransom Bros. with the loss. Fleming, however, was not entitled to hold the grain an unreasonable length of time before the resale.

"When property is thus sold by the vendor to establish its market value, the sale must be made within a reasonable period after the vendee has broken his contract, and in making the sale the vendor must exercise good faith, and do whatever may be done in the exercise of reasonable diligence to make the property sold bring the best price. *Moore* v. *Potter,* 155 N. Y., 481, 487, 50 N. E., 271, 63 Am. St. Rep., 692; *Tripp* v. *Forsaith Mach. Co.,* 96 N. H., 233, 45 Atl., 746; *Brownlee* v. *Bolton,* 44 Mich., 221, 6 N. W., 657; *McCombs* v. *McKennan,* 2 Watts & S., 216, 37 Am. Dec., 505; Mechem on Sales, section 1650. . . .

"When the vendor retains the property sold for months after the vendee has declined to accept it, and then exposes it to sale, the law will hardly indulge in the presumption that the value of the article has remained stationary in the meantime, and that the price realized is a fair test of the value of the article at the time of the breach."

*Alden Speare's Sons Co.* v. *Hubinger,* 129 Fed., 538, 64 C. C. A., 68.

See, also, *Gehl* v. *Milwaukee Produce Co.,* 116 Wis., 263, 93 N. W., 26, 35 Cyc., 525, and cases cited.

Having determined to resell the millet and hold the purchasers for the difference between the contract price and the amount brought on resale it was the duty of Fleming to act with reasonable diligence and to resell within a reasonable time. In view of the fact that at the time of the breach of the contract there was a falling market and that the season for the sale of millet seed was nearly over, we do not think Fleming acted with sufficient promptness. He should not be permitted, under such circumstances, to wait ten months before the resale, and the price realized upon such resale should not be treated as binding upon the purchasers in assessing the damages for which they are liable.

Having held the seed for more than ten months after breach without any notice to Ransom Bros. of his intention to make a resale, until after the first of the year 1919— about eight months—we must consider Fleming as having elected to keep the seed himself with the right to hold Ransom Bros. for the difference between the contract price of the seed and the market price at the time of the breach of contract. That is to say, we think Fleming is entitled to recover from Ransom Bros. the difference between the contract price at which the seed were purchased and the market price of such seed the latter part of May, 1918.

While there is some proof on the market price of millet seed in May, 1918, in the record, this proof is not at all satisfactory. The case was not developed with that point in mind. In his own testimony Fleming variously states

the market price of this commodity in May, 1918, three ways.

We think the case should therefore be remanded for further proof on this question.

The costs below will remain as taxed by the Chancellor. The costs of appeal will be divided between Ransom Bros. and Fleming.